**STATE of Missouri, ex rel. Ray BERNSEN, Plaintiff-Appellant,**

v.

**CITY OF FLORISSANT, et al., Defendants-Respondents.**

No. 43714.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 28, 1982.

Rehearing Denied Oct. 15, 1982.

Michael J. McAvoy, St. Louis, for plaintiff-appellant.

V. Jack Muehlenkamp, St. Louis, D.J. Chatfield, Jr., Labor & Industrial Relations Committee, Jefferson City, for defendants-respondents.

SMITH, Presiding Judge.

Ray Bernsen appeals from the judgment of the trial court affirming the action of the Florissant Personnel Commission which had upheld the action of the Florissant Police Chief in firing Bernsen as a police officer. The matter was before us in *State ex rel. Bernsen v. City of Florissant,* 588 S.W.2d 194 (Mo.App.1979) in which we reversed and remanded for a new hearing before the Personnel Commission because of certain violations of Bernsen's rights to due process before the Commission. The mandated rehearing was held resulting again in the Commission upholding the Chief's action in discharging Bernsen. We affirm.

Two female prisoners in the Florissant jail accused Bernsen of having offered to set them free in exchange for an act of fellatio, which offer one of the prisoners accepted. The police department began an immediate investigation, conducted by Inspector of Police Lowery. The investigation was initially criminal in nature, but subsequently became administrative. On the first day of the investigation Bernsen was requested to take a polygraph examination. He arrived for the examination but changed his mind and no examination was made. The polygraph examiner testified that Bernsen was at that time not a "testible subject" because of his emotional and physical condition and that the examiner had suggested Bernsen not take the examination for at least 24 hours. Thereafter Bernsen was asked by superior officers to take the test on several occasions. Five days later he advised the Chief of his decision not to take the examination. Two days after that he was given a direct order by the Chief to take the examination and the next day was again ordered by the

Chief to take the examination. He refused and was discharged for disobeying the last order.

Bernsen first premises error on the failure of the trial court to order his reinstatement because of an alleged failure of the Chief to follow the Florissant Manual of Procedure for Police. Specifically, Bernsen contends that the Chief instituted an administrative investigation before completion of the criminal investigation contrary to the provisions of the Manual set forth in the margin.[1] We do not read that section to prohibit concurrent investigations. Rather, it delays until after completion of the criminal investigation that portion of the administrative investigation which gives the officer under investigation the opportunity to present evidence in support of his position. This is obviously to avoid problems of self-incrimination and to insure that the officer's evidence is utilized solely for administrative purposes and not as part of the criminal prosecution. *See Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). Such a provision does not require that the exculpatory stage await completion of all criminal proceedings, only that it await completion of the criminal investigation by the investigating officer. Through such delay no confusion can result in the source of the evidence in the criminal investigation and the problems of the "rock and the whirlpool" found in *Garrity* can be avoided. *See Gardner v. Broderick,* 392 U.S. 273, 278, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280, 284, 88 S.Ct. 1917,

1919, 20 L.Ed.2d 1089 (1968); *Cox v. McNeal,* 577 S.W.2d 881 (Mo.App.1979) [5]. The record here supports a finding that at the time Bernsen was ordered to take the polygraph test by the Chief, Lowery had completed his criminal investigation and supplied the results of that investigation to the prosecuting officials. Bernsen, by his own admission, was aware that the results of the ordered polygraph examination could not be utilized against him in the criminal proceedings. We find no merit in Bernsen's first point.

■ The next charge of error is that the Commission held its vote on the propriety of the firing of Bernsen in secret, contrary to Sec. 610.010 RSMo 1978 et seq. However, Sec. 610.025.4 of that statute authorizes closed votes at any meeting relating to the firing of personnel of a public governmental body. The vote taken concerned the firing of an employee of the police department. The Commission was authorized to conduct its vote in private. *Wilson v. McNeal,* 575 S.W.2d 802 (Mo.App.1978).

■ Bernsen's final contention is that the Commission's findings that the Chief's order to Bernsen was reasonable and that Bernsen's reasons for taking the test were insufficient, were not supported by competent and substantial evidence. The Manual provided:

> "No member of this department shall disobey or, without good and sufficient cause, omit or neglect to carry out any lawful order, written or otherwise."

It is this provision on which Bernsen's discharge was based. The only attack on

---

1. Chapter 2, Section 2–21 "INSPECTOR OF POLICE

   One of the Administrative Commanders of this department shall be assigned the additional duties and responsibilities of the Inspector of Police, by the Chief of Police.

   It shall be the responsibility of the Inspector of Police to investigate all complaints from and charges leveled by any persons, against members of this department. Upon completion of the investigation, the Inspector of Police shall submit a full report of said investigation and it's [sic] findings to the Chief of Police, along with his recommendations in regard to action to be taken.

   All such investigations shall be made without bias. The officer involved shall be notified of the complaint and/or charges leveled at him and by whom, at the outset of the investigation, and shall be given the opportunity of presenting any evidence he may have in support of his position in the matter under investigation. IF HOWEVER the charges concern possible criminal prosecution of the officer, the foregoing shall not be done until the investigation is completed, and the case shall be handled the same as any other criminal investigation.

   Upon completion of the investigation, the officer involved and the complaining citizen shall both be advised of the findings in writing."

the lawfulness of the order has been previously discussed under Bernsen's first point. Although the results of a polygraph are inadmissible in court (*State v. Biddle*, 599 S.W.2d 182 (Mo. banc 1980) [1]), use of a polygraph for investigative purposes and (because of public acceptance) as a means of clearing the reputation of the police after a charge of misconduct, has been recognized by the courts, *Coursey v. Board of Fire and Police Commissioners*, 90 Ill.App.2d 31, 234 N.E.2d 339 (1967) [5]; *Leeks v. State*, 95 Okl.Cr.App. 326, 245 P.2d 764 (1952) [14–16]. There is no basis for a finding that the Chief's order was unlawful.

■ Bernsen admittedly disobeyed the order, he did not omit or neglect to carry it out. The "good and sufficient cause" language of this Manual relates only to omitting or neglecting, not to disobedience. There was therefore no need for the Commission to find the absence of "good and sufficient cause" although it did so. That finding was also supported by the evidence. The "good and sufficient cause" language applies in omitting and neglecting cases to causes which prevent compliance, not to subjective determinations of the wisdom of the order. There was no evidence that Bernsen was unable to comply with the order. The thrust of Bernsen's argument is that he had decided for "good and sufficient reason" that he was not a "testible subject" at the time he disobeyed the order. The evidence established, however, that that was a determination to be made by the polygraph examiner, not by the subject to be examined. Bernsen's opinions on that matter did not justify his refusal to obey the Chief's order to submit himself for examination.

Judgment affirmed.

PUDLOWSKI and SATZ, JJ., concur.