Kevin KENDRICK, Appellant,

v.

**BOARD OF POLICE COMMISSIONERS OF KANSAS CITY, MISSOURI, et al., Respondents.**

No. WD 52797.

Missouri Court of Appeals, Western District.

May 27, 1997.

Richard Helfand, Shari Miller Blank, Panethiere & Helfand, Kansas City, for appellant.

Dale Close, Lisa Morris, Legal Advisor's Office, Kansas City, for respondents.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

Officer Kevin Kendrick's employment with the Kansas City, Missouri Police Department was terminated November 7, 1995, by the Board of Police Commissioners. The Board found that Kendrick used excessive force on a prisoner, was dishonest and untruthful with the Department in connection with the investigation of the incident, failed to complete a use-of-force form, and failed to complete an injury report, in violation of the Kansas City, Missouri Police Department Personnel Policies and Procedural Instructions. Kendrick petitioned the Jackson County Circuit Court for review of the Board's decision. On April 22, 1996, the court entered judgment affirming the Board's action. Kendrick now brings his appeal to this court.

This court reviews the decision of the Board, not that of the circuit court. *Fritzshall v. Board of Police Comm'rs*, 886 S.W.2d 20, 23 (Mo.App. W.D.1994). On appeal from an agency decision in a contested case, we consider only whether the agency's findings are supported by competent and substantial evidence on the record as a whole. *Clark v. School Dist. of Kansas City*, 915 S.W.2d 766, 773 (Mo.App. W.D.1996). Substantial evidence is that which has probative force and from which the trier of fact reasonably could find the issues in harmony therewith. *Halford v. Missouri State Highway Patrol*, 909 S.W.2d 362, 364 (Mo.App. W.D.1995). We may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses. *Fritzshall*, 886 S.W.2d at 23. If the decision of the agency is supported by substantial and competent evidence on the whole record, it must be affirmed. *Halford*, 909 S.W.2d at 364. On the other hand, we must reverse the agency's findings if it is determined the decision is not supported by competent and substantial evidence on the whole record, or if the decision constitutes an abuse of discretion, or is unauthorized by law, or is arbitrary and capricious. *Fritzshall*, 886 S.W.2d at 23.

The evidence, together with all reasonable inferences drawn therefrom, is considered in the light most favorable to the Board's decision. *Clark*, 915 S.W.2d at 773. All evidence supporting a contrary finding is disregarded. *Division of Youth Servs. v. Hopson*, 933 S.W.2d 917, 919 (Mo.App. W.D. 1996). So viewed, the record reveals that on August 19, 1994, Officer Kendrick and his partner responded to a foot-chase involving Clarence Burnett in the area of 31st and York Streets. Officer Kevin Hulen, who was driving the police wagon, also responded to the call. Following Burnett's capture, Officer Hulen placed him in the back of the wagon. At the time, Burnett was handcuffed. Burnett was verbally assaultive and belligerent, however, he was not abusive towards Officer Hulen. Once inside, Burnett began kicking the wagon, so Officer Hulen shut the door to let Burnett cool off.

Thereafter, Officer Kendrick approached the wagon, advised Officer Hulen that Burnett needed to be secured with a seat belt, and proceeded to enter the wagon to seat-belt Burnett. Officer Hulen was standing approximately four to six feet from the rear of the wagon door and had full view of Burnett's face and shoulders over the right shoulder of Officer Kendrick. Although Burnett was still acting belligerent and verbally abusive, he was not physically abusive in anyway. Officer Hulen observed Officer Kendrick seat-belt Burnett and then grab Burnett's throat below the jaw line with his left hand and slap Burnett two to four times with his right hand. When Officer Kendrick exited the wagon, Officer Hulen heard Burnett yelling that an officer had just struck him. In response, Officer Kendrick turned toward the wagon and stated, "Nobody ever touched— Nobody ever hit you, nobody ever touched you." Sergeant Mark Johnson, who was also on the scene, heard Burnett complain that an officer had hit him in the face. Officer Hulen observed a small cut on Burnett's lower lip on the left side.

After locking the wagon door, Officer Hulen approached Officer Wishard and asked

him what he should do if someone were to strike a suspect in his wagon. Officer Wishard noticed that Officer Hulen appeared nervous. Officer Wishard advised Officer Hulen that he should inform a supervisor of any such altercation. That evening Officer Hulen reported to Sgt. Johnson that an unknown officer had slapped Burnett with an open hand four times in the face. Sgt. Johnson directed Officer Hulen to write an interdepartmental communication setting forth the details of the incident. Sgt. Johnson then reported the incident to Captain Gary Majors.

Later that evening, Captain Majors questioned Officer Kendrick on two separate occasions.[1] Officer Kendrick denied slapping or hitting Burnett. Officer Kendrick told Captain Majors that he put his hand against Burnett's chest to hold him up against the back of the wagon in order to seat-belt him. Captain Majors then asked Officer Kendrick to leave the room, so he could acquire more information about the incident.

When Captain Majors brought Officer Kendrick back in to discuss the incident a second time, Officer Kendrick again denied slapping Burnett.[2] However, Officer Kendrick admitted he was not gentle with Burnett because he was making movements towards him with his head. During this second interview, Captain Majors observed an abrasion on the back of Officer Kendrick's hand. Officer Kendrick told Captain Majors he thought maybe his hand had hit Burnett in the mouth when he grabbed him to seat-belt him. Captain Majors ordered Officer Kendrick to file an injury report and a use-of-force report.

At no time during either interview did Officer Kendrick ever mention having to use a choke hold known as the mandibular-angle pressure point technique to control Burnett, nor did he state that Burnett attempted to

head-butt him. Nonetheless, Officer Kendrick's use-of-force report contained the following recitation of events:

I entered the rear compartment of the wagon and told the subject to slide to his left so I could seat belt him in. He replied, "—— you". I again told him to slide to his left between the seat belts. At this time the subject rapidly leaned forward and attempted to strike me in the face with his forehead. His hair brushed against my right cheek leaving a quantity of hair gel on my right cheek. **At this point I attempted to restrain the subject by grabbing him by the lower jaw and applying the mandibular-angle pressure point technique.** The subject began to thrash about at which time I pushed him to my right and applied pressure to his jaw and yelled at him to comply and be still. He then complied. I then released his jaw and placed the seat belt around his waist, fastened it, and cinched it down. **The subject then reared back and attempted to head butt me again.** I attempted to grab his head as I had done before, but he turned his head from right to left violently. This action caused me to lose my grip and have to momentarily disengage. I then grabbed his lower jaw and pushed his head to the right, away from my face. I held his face firmly against the wagon wall until I retreated out the wagon door.

     *     *     *     *     *     *

At no time did I strike the subject, either intentionally or unintentionally, with an open or closed hand. I did not choke the subject.

(emphasis added).

Sometime thereafter, a miscellaneous investigation ensued. During the course of the investigation, Officer Kendrick was subjected to a polygraph exam in which he was asked

---

1. Prior to questioning Officer Kendrick the first time, Captain Majors advised him that the allegations made against him were serious and that he should be meticulous and completely honest in recounting the details of the incident. Captain Majors further advised Officer Kendrick that if he was not completely honest, Captain Majors would recommend that a miscellaneous investigation be initiated. Finally, Captain Majors advised Officer Kendrick that if the investigation showed the allegations were true and Officer Kendrick had not been honest, Captain Majors' recommendation would possibly include termination.

2. Prior to the second meeting, Captain Majors reiterated the importance of Officer Kendrick's honesty.

the following questions: "On August 19th did you slap that suspect in the face with your hand?" and "While in the wagon did you slap that suspect in the side of the face with your hand?" Officer Kendrick's answer to each was "No." The polygraph examiner, Ms. Patsy Stoltzfus, determined from the results of the test that Officer Kendrick's answers were deceptive and untruthful.

On January 12, 1995, Officer Kendrick was advised the miscellaneous investigation had been concluded and that he was suspended, pending a hearing before the Board of Police Commissioners on the following charges: (I) using excessive force in connection with the arrest of Clarence D. Burnett on August 19, 1994, (II) failure to complete a use of force form, (III) failure to complete an injury report, and (IV) making untruthful statements in the resulting Internal Affairs investigation. Subsequently, the Board conducted a hearing over three separate dates. Testimony was adduced from Officer Kendrick, Officer Hulen, Captain Majors, Burnett, Ms. Stoltzfus, and a host of other witnesses. Following the hearing, the Board found that: (1) Officer Kendrick's conduct on the night in question constituted an excessive use of force; (2) Officer Kendrick's statement that "he did not strike the suspect, either intentionally or unintentionally, with an open or closed hand" was untruthful; (3) Officer Kendrick was dishonest with the Department in connection with the investigation; and, (4) Officer Kendrick failed to complete the required use of force report until ordered to do so. Finding there was substantial and competent evidence that Officer Kendrick violated Department policies, the Board ordered his termination on November 7, 1995. The decision was upheld by the circuit court on April 22, 1996. Officer Kendrick brings two points on appeal.

In his first point, Officer Kendrick argues the trial court erred in sustaining the Board's decision to terminate because the decision

was not supported by competent or substantial evidence on the record as a whole and was contrary to the weight of the evidence presented in that: (1) the Department's evidence often contradicted itself and, (2) the polygraph evidence presented by the Department was questionable at best.

■ Officer Kendrick first complains that his testimony was the only credible evidence offered because the testimony of Officer Hulen and Burnett conflicted on several details. He contends the Board should have questioned the credibility of Officer Hulen because he was a rookie officer, and Burnett because he was a repeat criminal offender.

■ ■ "The determination of the credibility of the witnesses is the function of the administrative tribunal." *Edmonds v. McNeal,* 596 S.W.2d 403, 408 (Mo. banc 1980). In this case, the Board specifically found that Officer Kendrick was not credible based on his appearance and testimony before it. Instead, the Board choose to accept the testimony of Officer Hulen and Clarence Burnett. The Board is entitled to weigh the credibility of testimony received and believe or disbelieve all or part of any witnesses' testimony. *Vaughn v. Labor & Indus. Relations Comm'n,* 603 S.W.2d 63, 66 (Mo.App. E.D.1980). Thus, because we have no authority to judge the credibility of witnesses, we decline Officer Kendrick's invitation to do so. *Fritzshall,* 886 S.W.2d at 23.

■ Officer Kendrick also challenges the Board's consideration of the polygraph evidence, claiming it is not competent evidence because it "lacks scientific support for its reliability." We need not address this contention in great detail because the Board's decision to terminate is sufficiently supported by competent and substantial evidence without regard to the results of the polygraph examination.[3] Indeed, the evidence overwhelmingly supports the Board's decision. Officer Hulen testified that he ob-

---

**3.** While polygraph examinations are generally inadmissible as evidence in a trial due to their lack of scientific reliability, this court has previously determined that they may, nonetheless, be used in lawful investigations. *State ex rel. Fortney v. Joiner,* 797 S.W.2d 848, 853 (Mo.App. W.D. 1990); *See Campbell v. Personnel Bd. of Kansas*

*City,* 666 S.W.2d 806, 811 (Mo.App. W.D.1984). Moreover, polygraph examinations may also be used as a means of clearing the reputation of a police officer after a charge of misconduct. *State ex rel. Bernsen v. City of Florissant,* 641 S.W.2d 477, 480 (Mo.App. E.D.1982).

served Officer Kendrick place his hand over Burnett's throat and slap him in the face two to four times, while Burnett was handcuffed. Officer Hulen further testified that upon Officer Kendrick's exit from the wagon, he turned back towards the wagon and said, "Nobody ever hit you, nobody ever touched you."

Burnett's testimony is consistent with that of Officer Hulen. According to Burnett, Officer Kendrick pushed his head up against the wagon wall and hit him near his eye with his knuckle and then began hitting him in the face. Burnett also testified that after Officer Kendrick exited the wagon, he asked the officers standing outside the wagon if they were going to do anything about the incident. Sgt. Johnson's testimony that he heard Burnett complain about being hit further corroborates the testimony of Officer Hulen and Burnett.

The Board's decision to terminate is supported by substantial and competent evidence, separate and apart from the polygraph examination results. Point denied.

■ In his final point, Officer Kendrick challenges the Board's exclusion of evidence of the disciplinary action taken in an earlier case involving allegations of excessive force against a police officer. According to Officer Kendrick, the Board's decision to terminate was arbitrary, capricious, unreasonable and an abuse of discretion because, had the Board taken into account the evidence of the past disciplinary action, it may have imposed a sanction less harsh than termination.[4]

■ Initially, we observe that Officer Kendrick has provided this court with little argument and absolutely no case law in support of his position that the Board was obligated to consider evidence of past disciplinary action taken by the Department. "Where a party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered aban-

doned." *Beatty v. State Tax Comm'n*, 912 S.W.2d 492, 498–99 (Mo. banc 1995) (citing *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978)). On this basis alone, the point could be denied. However, we will, nonetheless, briefly address his contention.

At the hearing, Officer Kendrick sought to elicit testimony from the Chief of Police regarding an earlier case in which an officer was disciplined for excessive use of force. The Police Department objected to this line of questioning and, after some discussion, the Board excluded the evidence. A written offer of proof regarding the excluded evidence was accepted into the record by the Board.

■ According to Officer Kendrick's offer of proof, in August of 1990, the Chief of Police suspended a police officer for fifteen days for excessive use of force. Officer Kendrick argues this evidence is both relevant and determinative on the issue of discipline. While technical rules of evidence are not controlling in administrative hearings, fundamental rules of evidence do apply. *Speer v. City of Joplin*, 839 S.W.2d 359, 360 (Mo.App. S.D.1992). In any contested case, "[e]vidence to which an objection is sustained shall ... be heard and preserved in the record, ... unless it is wholly irrelevant, repetitious, privileged, or unduly long." § 536.070(7). "Evidence is relevant when it 'tends to prove or disprove a fact in issue or corroborates other relevant evidence which bears on the principal issue.'" *Gardner v. Missouri State Highway Patrol Superintendent*, 901 S.W.2d 107, 116 (Mo.App. W.D.1995) (*quoting State ex rel. Webster v. Missouri Resource Recovery, Inc.*, 825 S.W.2d 916, 942 (Mo.App. S.D. 1992)).

The simple answer to Officer Kendrick's contention is that the proffered evidence was wholly irrelevant to any issue in the case. Without designating it as such, Officer Kendrick is making a "proportionality" argument of sorts,[5] but the concept is inapplicable to an

4. Although the Chief of Police is empowered with the authority to promote, discipline and suspend all police officers, any officer adversely affected by such action is entitled to have such action reviewed before the Board of Police Commissioners. § 84.500; § 84.610. After a hearing on

the matter, the Board may affirm, modify or reverse the Chief's action. § 84.610.

5. In *State ex rel. Davis v. Shinn*, 874 S.W.2d 403 (Mo.App. W.D.1994), this court stated, at 406:
    Proportionality refers to the appropriateness of the punishment for a particular crime. In

employment disciplinary proceeding. Moreover, Officer Kendrick was not only charged with excessive use of force, he was additionally charged with failing to complete a use-of-force form, an injury report, and making untruthful statements in the resulting Internal Affairs investigation. In short, the excluded evidence does not " 'tend to prove or disprove a fact in issue or [corroborate] other relevant evidence which bears on the principal issue.' " *Id.* Furthermore, the exclusion of the proffered evidence does not make the Board's decision to terminate arbitrary, capricious, unreasonable or an abuse of discretion. Point denied.

The judgment is affirmed.

All concur.

*Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910), the United States Supreme Court ruled that inherent in U.S. CONST.AMEND. VIII is the principle "that punishment for crime should be graduated and proportioned to offense."

\*    \*    \*    \*    \*    \*

Proper review of proportionality in sentencing, then, is not concerned with whether Davis, as an individual, should receive the death penalty. The correct issue is whether any defendant in circumstances similar to Davis' should receive the death penalty.