ORION SECURITY, INC., Appellant,

v.

BOARD OF POLICE COMMISSIONERS OF KANSAS CITY, MISSOURI, et al., Respondents.

No. WD 61195.

Missouri Court of Appeals,
Western District.

Oct. 15, 2002.

Application for Transfer Denied
Dec. 24, 2002.

Robert Peter Smith, Kansas City, for appellant.

Dale H. Close, Albert A. Riederer II, Kansas City, for respondent.

Before JOHN E. PARRISH, Special Judge, KERRY L. MONTGOMERY, Special Judge, and ROBERT S. BARNEY, Special Judge.

ROBERT S. BARNEY, Special Judge.

Appellant Orion Security, Inc. (Orion) appeals from a judgment in favor of the Board of Police Commissioners of Kansas City (Police Board) which upheld a 30–day suspension of Orion's private security license because one of its employees, Florence Meador, performed private security services without a license.[1]

Orion presents four points on appeal. Point I alleges that the decision makers on the Police Board violated its rights to procedural due process because its members were partial and biased against Orion and its president, Charles Stephenson. Point II claims that the suspension was not supported by competent and substantial evidence upon the whole record and was unauthorized by 17 C.S.R. § 10–2.060(10) and (11) (1997), the code of state regulations which regulates individuals and entities providing private security services. Orion maintains that no violation of the regulations took place, or, alternately, that the violation was not committed by Orion's officers, directors, partners or associates. Point III alleges the suspension imposed by the Police Board was arbitrary, capricious, unreasonable and an abuse of discretion, because of its undue harshness, particularly as compared to the treatment accorded other violating entities or persons. Point IV chiefly asseverates that the Police Board exceeded its regulatory authority because the original letter suspending Orion from conducting any private security business in Kansas City, Missouri, was not signed by the Chief of Police or his authorized designee.

Orion is licensed by the Police Board, pursuant to statutory authority provided by § 84.720, RSMo 1994 and 17 CSR 10–2.060 (1997), to perform private security

1. This is the second occasion that this case has been before this Court. In *Orion Sec., Inc. v. Board of Police Comr's of Kansas City*, 43 S.W.3d 467 (Mo.App.2001), we reversed the judgment of the Circuit Court of Cole County granting Orion's "Motion for Judg-ment," and remanded the matter for further proceedings because Police Board was not given at least five days written notice that the motion would be heard and thereafter entered judgment adverse to Police Board. *Id.* at 472.

functions within the city limits of Kansas City. Charles Stephenson is Orion's president, sole director, and sole owner.

Orion hired Florence Meador in 1996 after she worked as a security officer in the State of Kansas and in Independence, Missouri. Meador applied at the Private Officer's Licensing Section (Licensing Section) for a license to work in Kansas City, Missouri, and received a temporary license. However, Meador failed the required written test and the Licensing Section notified Meador and Orion that her private security license was suspended. Meador also notified both Stephenson and Patti Rentrop,[2] an Orion employee, of her suspended status and that she desired assistance with the test.

Despite her suspended status, Orion continued to schedule Meador to work at the Pepsi–Cola Bottling plant in Kansas City, Missouri. Meador informed the Licensing Section of this violation on several occasions. Tamy K. Gallagher, Supervisor of the Licensing Section, called Stephenson to inform him of the violation. Stephenson informed her, in no uncertain terms, that no unlicensed personnel were working for Orion in Kansas City, Missouri.

Supervisor Gallagher informed the Kansas City Metro Patrol Division that Meador was working without a license at the Pepsi plant. On February 27, 1998, law enforcement officers from the Metro Patrol Division went to the Pepsi plant and found Meador. Meador was clothed in an Orion uniform and informed the officers that she was on-duty as a security guard, and affirmed that she was not licensed as a security guard. Meador was taken into custody and booked for false impersonation of a security guard. Meador subsequently affirmed that Stephenson had hired her and that Orion had been informed of her unlicensed status, yet, continued to schedule her to work at the Pepsi Plant and at another location in the area. Meador also provided time sheets and pay stubs from Orion for work performed after notice of her suspension, including at least 13 shifts actually worked inside the city limits of Kansas City, Missouri.

Orion claimed that Meador was inadvertently scheduled to work after her suspension and claims that she was removed from the schedule as soon as it discovered the oversight. Orion also claimed that it attempted, without success, to contact Meador to advise her of the scheduling change. According to Orion, although Meador was at the Pepsi plant when arrested, she had not officially signed in on the register and Orion did not recognize her as actually starting work that evening.

In March of 1998, former Chief of Police, Floyd O. Bartch, had a discussion with staff members regarding the Meador matter. Based on facts arising from the discussion, Chief Bartch decided, pursuant to the authority granted by 17 CSR 10–2.060 (1997), that Orion's license to operate a private security service should be suspended. On March 19, 1998, Supervisor Gallagher sent a certified letter to Stephenson suspending Orion and all employees licensed with the company from conducting any private security business in Kansas City, Missouri, for a 90–day period beginning on April 1, 1998, and continuing until June 30, 1998.[3]

---

2. One of Rentrop's duties at Orion was the scheduling of private security officers in locales throughout Kansas City, Missouri.

3. The basis of this suspension was a violation of 17 C.S.R. § 10–2.060(10)(C)(1997), which provides:

(10) The chief of police or his/her designee may suspend or revoke a license granted

Orion appealed the decision to the Police Board on March 24, 1998. After the Police Board heard the evidence, but before its final decision, it allowed the two parties to attempt to settle the matter to prevent Orion from going out of business. Chief Bartch proposed an alternative penalty which included a 6–month probation and a fine of $10,000.00. Orion rejected the proposal. Later the Police Board affirmed the suspension, but reduced it to 30 days. Orion then petitioned the Circuit Court of Cole County for review of the Police Board's decision. On February 14, 2002, the Circuit Court affirmed the Police Board's decision. Orion now appeals to this Court.

■■■ "This court reviews the decision of the Board, not that of the circuit court." *Kendrick v. Board of Police Com'rs of Kansas City, Mo.*, 945 S.W.2d 649, 651 (Mo.App.1997); *Fritzshall v. Board of Police Comm'rs*, 886 S.W.2d 20, 23 (Mo.App. 1994). "On appeal from an agency decision in contested case, we consider only whether the agency's findings are supported by competent and substantial evidence on the record as a whole." *Kendrick*, 945 S.W.2d at 651. "We may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses." *Id.; Fritzshall*, 886 S.W.2d at 23. "If the decision of the agency is supported by substantial and competent evidence on the whole record, it must be affirmed." *Kendrick*, 945 S.W.2d at 651. "On the other hand, we must reverse the agency's findings if it is determined the decision is not supported by competent and substantial evidence on the whole rec-

ord, or if the decision constitutes an abuse of discretion, or is unauthorized by law, or is arbitrary and capricious." *Id.; Fritzshall*, 886 S.W.2d at 23. The evidence and all reasonable inferences from the evidence is considered in the light most favorable to the administrative agency's findings. *Kendrick*, 945 S.W.2d at 651; *see also State Bd. of Nursing v. Berry*, 32 S.W.3d 638, 640 (Mo.App.2000). "The fact-finding function rests with the [agency], and even if the evidence would support either of two findings, the court is bound by the [agency's] factual determination." *Berry*, 32 S.W.3d at 640. While this Court cannot substitute its own judgment on factual matters, it can independently determine questions of law. *Id.* at 641.

■■■ "The term 'substantial evidence' both implies and comprehends competent evidence." *Fujita v. Jeffries*, 714 S.W.2d 202, 206 (Mo.App.1986). Substantial evidence is defined by the Missouri Supreme Court in *Collins v. Division of Welfare*, 364 Mo. 1032, 270 S.W.2d 817 (Mo. banc 1954) as:

> [E]vidence which, if true, has probative force upon the issues, i.e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to establish which the evidence was introduced.

*Id.* at 820; *see also Sprint Comms. Co., L.P. v. Dir. of Revenue*, 64 S.W.3d 832, 834 (Mo. banc 2002).

under section 84.720, RSMo pursuant to the procedures set forth in section (11) of this rule, when there exists reliable information that the licensee or, if the licensee is

an organization, any of its officers, directors, partners or associates has . . . .

. . .

(C) violated a provision of this chapter.

In our review of Orion's first point, we observe that Orion maintains that the decision makers on the Board of Police were partial and biased against Orion and its president, Charles Stephenson. Orion contends that this bias constitutes a due process violation that was contrary to the company's rights under Article I, Section 10 of the Missouri Constitution and Amendment 14 of the United States Constitution.

"The procedural due process requirement of fair trials by fair tribunals applies to administrative agencies acting in an adjudicative capacity." *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 59 (Mo.App.1990). "Administrative decisionmakers must therefore be impartial." *Id.* A decision maker who has unalterably prejudged the adjudicative facts is biased. *Id.*

"[A]dministrative decisionmakers are no more expert at determining their impartiality than judges are at determining theirs." *Id.* Since 17–CSR 10–2.060 (1997) places Police Board members in the position of adjudicators making findings of fact and conclusions of law, the determination of the existence of their impartiality should be reviewed using the same standard used to review a judge's determination of his or her challenged impartiality. *Id.* Accordingly, challenges to the adjudicator's impartiality must be based upon the whole record, and not solely on the basis of the judge's conviction of his own impartiality. *See Fitzgerald*, 796 S.W.2d at 59; *see also In re Marriage of Burroughs*, 691 S.W.2d 470, 474 (Mo.App. 1985). We review on the basis of an abuse of discretion standard. *Fitzgerald*, 796 S.W.2d at 59–60.

"There is a presumption in favor of the honesty and impartiality of administrative decision makers." *Wagner v.* *Jackson County Bd. of Zoning Adjustment*, 857 S.W.2d 285, 289 (Mo.App.1993). An administrative decision maker's familiarity with the adjudicative facts even to the point of having reached a tentative conclusion prior to the hearing, does not disqualify the decision maker unless there is a showing that the decision maker is unable to judge the particular case fairly. *Fitzgerald*, 796 S.W.2d at 59. "The court indulges a strong presumption in favor of the validity of an administrative determination and will not assume that an administrative body was improperly influenced absent clear and convincing evidence to the contrary." *Kukuljan v. Metropolitan Bd. of Police Comm'rs.*, 871 S.W.2d 119, 121 (Mo.App.1994); *Gamble v. Hoffman*, 732 S.W.2d 890, 894 (Mo. banc 1987). "The appellant must carry the burden of overcoming this presumption." *Kukuljan*, 871 S.W.2d at 121.

Orion sets out a number of reasons why the Police Board was biased and prejudiced against Orion. It points to the fact that the Kansas Association of Private Investigators (KAPI), with which Stephenson contends he is affiliated, had previously criticized the Police Board for its employment policies regarding Kansas City, Missouri, police officers in the private security industry. KAPI also had brought a class action lawsuit against Police Board members alleging improper license fee increases. Additionally, Orion maintains that the Police Board reacted in a biased and prejudicial manner because Orion and Stephenson had filed a complaint in federal court alleging Kansas City violated the Sherman Anti–Trust Act and had tortiously interfered with an Orion contract. Orion also claims that this bias and prejudice is reflected in the fact that the Police Board maintained a dossier of information on Stephenson and Orion. Finally, Orion contends that the Police Board's offer to accept a $10,000.00 fine and other conces-

sions in exchange for dropping the suspension also evidence bad faith and bias.

██ Police Board maintains that its members were not biased and prejudiced against Orion or Stephenson. Police Board persuasively shows that the level of criticism by Orion and Stephenson against the Police Board was far less pervasive than indicated by Orion. Specifically, the referred to criticism consisted primarily of nine letters that were written over an eight-year period to various public officials and news media in the Kansas City area. As best we glean from the record, only three of these letters were specifically directed to a Police Board member, former Mayor Emanuel Cleaver, and Cleaver did not participate in the decision to suspend Orion's license. Furthermore, the class action lawsuit initiated against the Police Board was brought by KAPI on February 18, 1998, after the commencement of the Meador investigation. Neither Stephenson nor Orion was a named party in the class action lawsuit and neither Orion nor Stephenson was mentioned in the pleadings. Additionally, the federal complaint filed by Orion and Stephenson was directed against City of Kansas City. Nowhere in the federal complaint was there even a remote reference to the Police Board. Furthermore, the Police Board is separately organized under state law and largely operates independently of the City of Kansas City. *See* § 84.720, RSMo 1994. Lastly, little if any support exists in the record tending to prove that Chief Bartch was influenced by any dossier containing newspaper clippings or other evidence of animus against either Orion or Stephenson, particularly when he discussed the matter of the suspension of Orion with his staff.

Lastly, we observe that despite Chief Bartch's determination to suspend Orion's private security service for a period of 90 days, and despite Chief Bartch's compromise proposal to resolve the dispute, involving a six-month probationary period and $10,000.00 fine, *no such fine or other alternative punishment was imposed by the Police Board.* As previously set out, the Police Board merely delayed its decision until after a discussion was undertaken with a view to the resolution of the dispute by Chief Bartch and Orion. Indeed, the Police Board reduced the initial suspension imposed by Chief Bartch from 90 days to 30 days.

We find that substantial and competent evidence exists to support the Police Board's decision, and the purported evidence of bias and prejudice presented by Orion does not overcome the strong presumption that the Police Board adjudicated the matter fairly. *Fitzgerald,* 796 S.W.2d at 59; *Wagner,* 857 S.W.2d at 289. There has been no showing of an abuse of discretion. Point I is denied.

In its second point, Orion contends that the suspension was not supported by competent and substantial evidence and was unauthorized by 17 C.S.R. § 10–2.060(10) and (11) (1997). Orion argues that the violation was not committed by Orion's officers, directors, partners or associates as required by regulations and, alternately, that no violation actually took place.

██ We observe that " '[a] corporation can obtain knowledge only through its officers or agents and it is a well-established rule of agency that the knowledge of an agent of a corporation with reference to a matter within its scope of his authority and employment and to which his authority or employment extends is imputed to the corporation.' " *Southwest Bank of Polk County v. Hughes,* 883 S.W.2d 518, 522 (Mo.App.1994) (quoting *Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co.,* 356 Mo. 687, 203 S.W.2d 415, 421 (1947)); *see also Iota Mgmt. Corp. v. Boulevard*

*Inv. Co.,* 731 S.W.2d 399, 410 (Mo.App. 1987).

The record contains competent and substantial evidence to support the Police Board's determination that Orion knew that Meador was working without a license. The record shows that the Licensing Section notified Orion that on December 10, 1997, Meador was not authorized to perform security services within the City of Kansas City, Missouri. Meador also contacted Orion and talked to Pat Rentrop regarding her unlicensed status. According to Meador, Rentrop indicated to Meador that she would inform "Chuck," i.e., Stephenson, of her unlicensed status and of Meador's need for help in passing the examination. After receiving repeated reports that Meador continued to work for Orion without a license, the Licensing Section called Stephenson directly on February 11, 1998, and informed him of Meador's unlicensed status. In all, Meador worked for Orion with a suspended license at least 13 shifts over a six-week period, six of which followed the Licensing Section's phone call to Stephenson. When arrested on February 27, 1998, Meador was clothed in an Orion security guard uniform. She indicated to police officers that she was on duty for Orion but lacked a valid license to serve as a private security guard. Meador also stated that at that time Orion personnel knew that she lacked a valid license but continued her employment with Orion.

Section 10–2.060(10) pertains to "officers, directors, partners or associates" of a firm that is a licensee. 17 C.S.R. § 10–2.060(10) (1997). Although this section does not define "associate," it is clear that the adjudicating agency correctly recognized the ordinary and usual meaning of the term. *See Moore v. General Motors Corp.,* 558 S.W.2d 720, 731 (Mo.App.1977) (containing no definition of terms, assumption is made that the terms were "intended to be employed in their common and ordinary meaning."). MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 70 (10th ed., 1993), defines "associate" as "an entry level member" or an "employee, worker." The evidence supports the proposition that Rentrop, while referred to as a clerk, nonetheless exercised management responsibility and oversaw the licensing and scheduling of Orion's employees, including Meador. These activities qualify Rentrop as an associate, and her knowledge, together with that of Stephenson, is imputed to Orion. *Hughes,* 883 S.W.2d at 522.

Accordingly, the record contained sufficient and substantial evidence supporting the Police Board's determination that Orion, through its principle officer Stephenson and employee Rentrop, had knowledge of Meador's activities. *See Id.* Under these circumstances, we are bound by the Police Board's determination and it is irrelevant that there may be evidence for a contrary finding. *Berry,* 32 S.W.3d at 640. Point II is denied.

Orion also contends that the 30–day suspension imposed by the Police Board was arbitrary, capricious, and unreasonable because of its comparative and undue harshness. Specifically, Orion argues that the Police Board's decision to suspend Orion is the first time such a suspension was imposed for a first-time violation of the licensing requirements in the Kansas City area. Additionally, Orion argues that a prior offender of the licensing requirement received less discipline for more serious violations. Orion, however, has provided no authority in support of its position that the Police Board was obligated to consider evidence of past disciplinary action taken. " 'Where a party fails to support a contention with relevant authority or argument beyond conclusions, the point is considered abandoned.' " *Ken-*

*drick,* 945 S.W.2d at 654 (quoting *Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 498–99 (Mo. banc 1995)). On this basis alone, the point could be denied.

 Nevertheless, in considering the point, we find nothing to suggest that the Police Board abused its discretion or acted in a capricious or unreasonable manner in imposing a sentence well within its prescribed guidelines. *See State ex rel. Baer v. Campbell,* 794 S.W.2d 690, 691 (Mo.App. 1990).

Several Missouri cases involving similar licensing issues illustrate this point. In *M.M. v. State Bd. of Accountancy,* 728 S.W.2d 726 (Mo.App.1987), an accountant sought review of the State Board of Accountancy's decision to revoke his certified public accounting certificate after it determined that the accountant had improperly retained certain financial records of a client and had failed to give his client good accounting services. Accountant asserted that the penalty was arbitrary, capricious and unreasonable because in other similar cases, involving more severe dereliction of duties, the State Board of Accountancy had not imposed as severe a penalty as was being imposed on him. On appeal, the court affirmed the State Board of Accountancy's actions. It stated that "[a]side from an abuse of discretion, we cannot substitute our judgment for that of the Board." *Id.* at 727. Furthermore, the court set out that "[t]he mere fact the harshest penalty was imposed here and not in another case, does not, by itself, prove the Board abused its discretion." *Id.* Similarly, in *Massey v. Missouri Dental Board,* 698 S.W.2d 562 (Mo.App.1985), a dentist's license was revoked because he permitted unlicensed persons to practice dentistry in violation of "4 CSR 110–2.120 and Chapter 332 RSMo 1978." *Id.* at 563. Dentist similarly claimed the penalty imposed was arbitrary, capricious, and excessive in comparison to a six-month suspension of license imposed by the Missouri Dental Board on another dentist for the same offense. On appeal, however, the court affirmed the Missouri Dental Board's order. The court determined that it was for the Missouri Dental Board to consider the issues involved and make the decision, and determined that the Missouri Dental Board had not abused its discretion in imposing the penalty that it did. *Id.* at 563–64.

There was ample evidence to support the findings that Orion violated the provisions of 17 C.S.R. 10–2.060 (1997). Under these circumstances disciplinary penalties imposed in other cases are not material to our inquiry. *State ex rel. Baer,* 794 S.W.2d at 692. The Police Board did not abuse its discretion or act capriciously or unreasonably in suspending Orion's license for a 30–day period. Point III is denied.

 In its last point, Orion contends that the 30–day suspension period should not be upheld because Chief Bartch and the Licensing Section failed to adhere to the relevant statutory and regulatory procedural requirements. Specifically, Orion claims that the suspension letter was not signed either by Chief Bartch or his designee. Alternately, Orion again argues that the letter contained a defective reason for suspension in that no offense occurred on the date set out. We disagree.

Orion contends that the suspension letter failed to comply with the relevant statutory and regulatory requirements because Supervisor Gallagher, not Chief Bartch, signed the suspension letter.[4] Or-

---

4. The procedure regarding the suspension of licenses is set forth in 17 C.S.R. § 10–2.060(11)(B) (1997), which states that notice of suspension "shall be signed by the chief of police or his/her designee ...."

ion alleges that Supervisor Gallagher was not designated by Chief Bartch to sign notices of suspension, and that Chief Bartch did not write the letter or discuss the letter or the information contained within with anyone.

■ Section 10–2.060(11)(B) (1997) sets out that the notice mailed to the party affected shall indicate the reasons for the suspension. To satisfy due process requirements, the notice must be "'reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 385 (Mo.App.1997) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

The Supreme Court of Missouri has addressed a similar issue as that of the instant case, but pertaining to whether strict statutory compliance is required. It affirmed that:

> In determining whether or not a statute is mandatory or directory, the general rule is that when a statute provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed. However, if it merely requires certain things to be done and nowhere prescribes results that follow, such a statute is merely directory.

*Garzee v. Sauro*, 639 S.W.2d 830, 832 (Mo. 1982); *see also Greenwich Condo. Assoc. v. Clayton Inv. Corp.*, 918 S.W.2d 410, 414–15 (Mo.App.1996).

Section 10–2.060(11)(B)(1997), merely prescribes the procedure for mailing notice to violators and specifies no result for a failure to strictly comply with its terms. Consistent with the Missouri Supreme Court's approach, we find the regulation to be merely directive and not mandatory, and the Police Board's action does not fail.

The record shows that substantial evidence exists to conclude that the signature requirements of the regulation were satisfied. First, the letter was on Chief Bartch's letterhead. Second, Chief Bartch testified that while he did not write the suspension letter, he made the decision to suspend Orion's license, after discussing the Meador matter with staff members. Third, Chief Bartch was aware of the suspension proceedings and took no steps to retract the letter. At minimum, the evidence shows that Chief Bartch ratified Gallagher's actions and she constructively acted as his designee.

Orion also contends that the letter contained a defective reason for the suspension because the letter cited February 27, 1998, as the date of the violation, when in fact no offense occurred because Meador did not actually work for Orion on that date. Accordingly, Orion argues that the order of suspension entered by the Police Board should be reversed. This particular contention has already been discussed in the context of Point Two, *supra*.[5]

■ It is our view that the letter to Orion provided sufficient notice of the violation charged. The letter set out that the suspension was based on Orion permitting an unlicensed individual to perform private security services within Kansas City, Missouri, on February 27, 1998. The suspension letter also provided the name of the individual and the date and place at which the violation occurred.

---

5. As previously discussed in Point Two, *supra*, the record shows that on February 27, 1998, Kansas City police officers found Meador at the Pepsi plant, dressed in an Orion security service uniform. Meador then informed police officers that she was on duty as a security guard for Orion.

Moreover, Orion has not demonstrated any prejudice resulting from any failure to strictly adhere to the statute's notice requirement. Prior to the hearing, Orion had more than ample opportunity to ascertain the particulars surrounding the charged violation, including the date and place of the purported violation. In this instance, a technical violation involving the signing of the suspension letter does not bar application of Section 10–2.060(11)(B) (1997), since Orion became aware of the particulars surrounding its purported violation during the course of the hearing process in sufficient time to prepare an adequate response to the charges. *See Williams v. State*, 740 S.W.2d 297, 298 (Mo.App.1987). Point IV is denied.

The judgment of the Circuit Court of Cole County is affirmed.

All concur.