Tim JONES, Respondent,

v.

CITY OF JENNINGS, Appellant.

No. ED 75895.

Missouri Court of Appeals,
Eastern District,
Division One.

June 13, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 25, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Lloyd E. Eaker, Jamis Kresyman, Clayton, for appellant.

Rick Barry, Gregory Kloeppel, St. Louis, for respondent.

## OPINION

JAMES R. DOWD, Judge.

The City of Jennings appeals from a judgment of the circuit court reversing its decision to suspend and terminate Jennings Police Officer Tim Jones. It also appeals the order reinstating Jones to the City of Jennings Police Department with backpay. We affirm the judgment of the circuit court.[1]

### Facts

On June 26, 1995, Officer Tim Jones (hereinafter "Jones"), a commissioned police officer with the City of Jennings, was suspended for two days without pay. On January 22, 1996, Jones was terminated, effective following a second suspension without pay. He requested a hearing before the Jennings Police Personnel Board (hereinafter "the Board"), pursuant to Jennings Ordinance Section 29.32.[2] The Board recommended to the City Council that it confirm Jones's termination and suspensions. On June 17, 1996, the City Council confirmed its earlier decision to terminate Jones following his suspension. The evidence viewed in the light most favorable to the Board's finding is set out below. The stated grounds for Jones's termination and suspensions revolve around three separate incidents.

### The First Incident

On January 24, 1995, Jones left his assigned sector while on duty and drove in his police car to 5537 Davidson in the City of St. Louis to contact a party regarding a debt owed to a local businessman. Jones was investigated and cited for violating Rules 50.1.4, 50.1.5 and 50.3.6 of the Jennings Police Department. Rule 50.1.4 requires a police officer to notify the dispatcher of his status and location when arriving on the scene of a call, when returning to service from a call, when calling in and out of service and when leaving his patrol vehicle. Rule 50.1.5 requires an officer to prepare a daily work log of his activities. Rule 50.3.6 prohibits an officer from leaving his assigned sector without authorization and not in pursuit of another vehicle.

Jones was kept informed of the investigation while it proceeded. At the end of the investigation, the Chief of Police recommended to the City Council that Jones be suspended for two days without pay. On June 26, 1995, the City Council approved the recommendation. The City Clerk advised the Chief of Police of this decision by a letter dated July 3, 1995. The Chief of Police, in turn, advised Jones of the Council's decision by a letter dated July 6, 1995.

### The Second Incident

On February 27, 1995, Jones made a traffic stop two miles outside the City of Jennings. Jones was again investigated and charged with violating Jennings Police Department Rule 50.1.4 and 50.3.6. He was notified of this investigation as it proceeded.

---

1. Although we note that a possible disposition of this case would be to remand it to the Jennings City Council to hold a second hearing, this relief was never requested by the City of Jennings. Also, the City of Jennings never argued that the circuit court erred by remanding the case with instructions to reinstate rather than with instructions to hold a second hearing. Accordingly, we do not reach that issue.

2. Jennings Ordinance Section 29.32 is authorized by Section 85.541 RSMo 1994. All further statutory references are to RSMo 1994 unless otherwise noted.

## The Third Incident

On December 6, 1995, the Chief of Police ordered Jones to submit a note from his doctor before having surgery on his shoulder. The note was to specify the procedure and indicate the anticipated recovery time. Jones had the surgery on December 8, 1995. It is undisputed that Jones at some point provided the requested note, which was dated December 7, 1995. Jones testified that he delivered the note on December 7, 1995 to the Chief of Police's secretary. The secretary testified that Jones gave her the note on December 7, and she gave it to the Chief of Police on December 7. The Chief of Police testified that the secretary did not give him the note on December 7 and that he did not receive it until December 18, 1995. Jones was charged with insubordination, in violation of Jennings Police Department Rule 14.3.2 for failing to obey a proper direction or lawful order of a supervisor or commanding officer of the same or higher rank, in that he failed to provide the doctor's note prior to the surgery.

## Procedural History

On January 16, 1996, the Chief of Police recommended to the City Council that Jones be terminated. The City Council voted to terminate Jones on January 22, 1996. By a letter dated January 23, 1996, the City Clerk notified the Chief of Police that the City Council suspended Jones without pay from January 10 to January 22 and terminated him effective January 23, 1996. The Chief of Police gave Jones a copy of the January 23 letter.

On January 24, 1996, Jones, through his attorney, filed an appeal to the Board of the two-day suspension, the second suspension, and his termination. The Board conducted a four-day hearing in which testimony and evidence were presented and a transcript was made. At the conclusion of the hearing, the Board made findings of fact and conclusions of law and recommended to the City Council that the suspensions and termination be affirmed.

On July 17, 1996, the City Council met and affirmed the decision of the Board. On July 22, 1996, Jones filed a petition in the Circuit Court of St. Louis City to review his dismissal. On April 7, 1997, the circuit court ordered the case remanded to the City Council with instructions to render a written opinion accompanied by findings of fact and conclusions of law. After an unsuccessful appeal to this Court, the City Council adopted the findings of fact and conclusions of law of the Board. The parties then stipulated that the City of Jennings had complied with the circuit court's order and that the matter was ready to be determined on the merits. On January 28, 1999, the circuit court, pursuant to Section 536.140, reversed the decision of the City Council to terminate Jones's employment and ordered Jones reinstated with backpay. The circuit court also remanded the case for a determination of the backpay due. The City of Jennings appeals.

## Standard of Review

On appeal from an administrative agency decision in a contested case, we review the findings and decision of the agency, not the judgment of the circuit court. *Scott Tie Co., Inc. v. Missouri Clean Water Com'n*, 972 S.W.2d 580, 584 (Mo.App. S.D.1998). In reviewing an administrative agency decision, the evidence is viewed in its entirety together with all legitimate inferences therefrom, in a light most favorable to the agency. *Id.* Our review is controlled by Section 536.140.2, which provides:

> The inquiry may extend to a determination of whether the action of the agency
>
> (1) Is in violation of constitutional provisions;
>
> (2) Is in excess of the statutory authority or jurisdiction of the agency;
>
> (3) Is unsupported by competent and substantial evidence upon the whole record;

(4) Is, for any reason, unauthorized by law;

(5) Is made upon unlawful procedure or without a fair trial;

(6) Is arbitrary, capricious or unreasonable;

(7) Involves an abuse of discretion.

### Analysis

We hold that the decision of the Board to terminate Jones is made upon unlawful procedure because Jones failed to receive proper notice of the reasons he was being terminated, and because the Board prevented Jones from presenting evidence to rebut the charges against him.

*No Adequate Notice of the Grounds for Termination*

Jones contends that his termination violated his rights to due process because he failed to receive adequate notice of the grounds for his termination. He claims that the only notice he received was the second page of a two-page letter given to him during the Board's hearing. The Chief of Police testified at the hearing that on January 23, 1996, he gave Jones a copy of the two-page letter explaining the reasons for his termination.

The letter from the City of Jennings reads in its entirety:

January 23, 1996

TO: CHIEF TRENTHAM

FROM: CITY CLERK CHERYL BLAKE

RE: OFFICER TIM JONES

At their meeting of January 22, 1996, the Jennings City Council voted that Officer Tim Jones be suspended without pay from January 10th through January 22nd, and that his employment be terminated effective January 23, 1996.

[PAGE BREAK]

1) As a result of the incident last January (leaving the city while on duty without permission), Officer Jones was suspended and given a warning that a repeat of the offense could result in termination (Council action June 26, 1995).

2) Officer Jones left the city without permission again in February, 1995. The results of the investigation of this incident are being reported to the Council on January 22, 1996.

3) Officer Jones violated a direct order from Chief Trentham to provide the Chief with a doctor's note prior to taking leave for scheduled surgery. Chief Trentham requested the note on December 6th, Officer Jones had surgery on the 8th, did not report for work beginning on the 9th, and did not provide Chief Trentham with the doctor's note until the 19th (the note was dated by the doctor December 7th).

Officer Jones was suspended (with pay) by Chief Trentham for 10 days beginning January 10th. The Council is being asked to decide:

1) Whether Officer Jones should be suspended without pay, and if so, for how long. As of January 22nd, he has been off work for twelve days as a result of the suspension by Chief Trentham.

2) Whether Officer Jones'[s] employment should be terminated.

The various violation reports, reports of results of investigations, etc. are available in the Mayor's office if you wish to review them.

Viewing the evidence in the light most favorable to the decision of the Board, as we are required by Section 536.140 and *Scott Tie Co., supra,* Jones was given the above letter at the earliest on January 23. We find the notice provided to be inadequate on its face. First, this letter was not addressed to Jones, but was written by the City Clerk to the Chief of Police. Second, due process demands that administrative agencies must comply with its own rules when terminating an employee. *Collier v. Metropolitan St. Louis Sewer Dist.,* 706 S.W.2d 894 (Mo.App. E.D. 1986). Jennings Ordinance 29–32 man-

dates that the "reason for such suspension, demotion, discharge, or any separation from active duty shall be stated in writing and given to the affected member of the department." While the first page of the letter is clearly written after the City Council made its decision, it is obvious from its language that the second page was written before the City voted to terminate Jones. It does not specify the reasons for Jones's termination. It merely lays out the reasons why the Council was considering terminating Jones. Even after reading this letter, Jones is left to speculate whether the City Council relied on all or some of these charges to terminate him.

In *Sorbello v. City of Maplewood*, this Court held that notice to a police officer of the reasons for the officer's dismissal, while not requiring the technical precision of a criminal indictment or information, must state the charges made against the officer in an administrative procedure specifically and with substantial certainty. *Sorbello v. City of Maplewood*, 610 S.W.2d 375, 376 (Mo.App. E.D.1980). The administrative procedure in this case was the hearing before the Board. The letter given to Jones was not sufficient to apprise him specifically or with substantial certainty of the reasons relied upon by the City for Jones's termination so that he could prepare a defense.

*The Inability of Jones to Present Evidence*

Jones also contends that his termination violated his right to due process because the Board refused to admit evidence that he could have used to rebut the allegations made by the Chief of Police. This evidence concerned an alleged leak of information harmful to the Police Department to a local news station. Jones claims that the Internal Affairs Department became suspicious of him in connection with that leak. He further claims that he would have used that evidence to rebut the Chief of Police's reasons for his termination. Consequently, he argues, the City denied his due process right to be heard.

Jennings Ordinance Section 29–59 provides that a member of the police department who is demoted, suspended or discharged shall, at a hearing before the police personnel board, "have the right to present evidence at such hearing." Jones attempted, but was not permitted, to present evidence concerning the leak to the Board. He also requested and was denied a copy of the Internal Affairs report of that leak.

The City of Jennings argues that the Chief Of Police's subjective motive was irrelevant to the issue before the Board and cites *Heinen v. Police Personnel Bd. Of Jefferson City*, 976 S.W.2d 534, 542 (Mo.App. W.D.1998). The City argues that even if the Chief of Police was motivated by the leak, his motivation has no bearing on Jones's violations of the Jennings Police Department Rules.

The evidence sought to be introduced in this case, however, is more relevant than in *Heinen*. In *Heinen*, the discharged officer attempted to cross-examine the Chief of Police of Jefferson City to prove that the Chief had a problem controlling his temper in his relations with his subordinates, and that the real reason he had terminated the officer was out of personal animosity. *Id.* at 542. Here, the evidence Jones sought to introduce concerning the leak is relevant because it bears on the motive of the individual bringing the charges and tends to explain the paucity of other evidence supporting Jones's termination.

On June 26, 1995, the City Council voted to suspend Jones for two days without pay for the incident involving the trip to 5537 Davidson. Therefore, Jones could only be terminated for additional violations of Jennings Police Department Rules. Concerning the charge of insubordination for failing to provide the doctor's note before surgery, it is undisputed that Jones provided a note from his doctor and that he had surgery at the scheduled time. The only issue is whether it was provided before the surgery, as Jones contends, or

after the surgery, as the City of Jennings contends.

Jones testified that he delivered the note to the Chief's secretary on December 7, 1995. The secretary testified that she gave the note to the Chief of Police on December 7. The day after the secretary testified, the Chief of Police recommended to the City Council that she be suspended without pay. Further, the note was dated December 7, 1995. The Chief of Police testified that he never received the note and that the secretary never gave it to him. Viewed in the light most favorable to the Board, the Chief of Police did not personally receive the note on December 7. The record also contains evidence that Jones delivered the note on December 18th. However, there is no dispute that the Chief knew about the surgery or that Jones needed to have the surgery performed. Nothing in the record disputes Jones's testimony that he told the Chief he would be out a minimum of four weeks following surgery.

■ Whether the insubordination charge and the February 27, 1995 traffic stop are adequate grounds for the City of Jennings to terminate Jones is not for us to decide. Jones could, however, have used the evidence about the leak to question the authenticity of the charges against him. By not admitting this evidence, the City denied Jones his right to be heard under Jennings Ordinance 29–59. Due process demands that administrative agencies must comply with its own rules when terminating an employee. *Collier v. Metropolitan St. Louis Sewer Dist., supra.* By not complying with its own ordinance in its decision to terminate Jones, the City of Jennings deprived him of his right to due process.

### Conclusion

■ The action of the City of Jennings was made upon unlawful procedure. Jones did not receive adequate notice of the reasons why he was terminated, and he was not allowed to present evidence to rebut the charges against him. These pro-cedural irregularities deprived Jones of a fair hearing as provided for by Section 536.140.2(5). Accordingly, the judgment of the circuit court reversing the Jennings City Council is affirmed. The decision of the Jennings City Council suspending and terminating Jones is reversed. The case is remanded to the circuit court to remand to the City Council with instructions to reinstate Jones with backpay and to determine the amount of backpay due, taking into account any offsets.

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.