Jeffrey ROORDA, Appellant,

v.

THE CITY OF ARNOLD, Missouri,
et al., Respondents.

No. WD 62570.

Missouri Court of Appeals,
Western District.

June 22, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 27, 2004.

Application for Transfer Denied
Sept. 28, 2004.

Richard A. Barry, III, St. Louis, MO, for appellant.

Stephen T. Hamby, Michael D. Hart, Co–Counsel, St. Louis, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, PATRICIA BRECKENRIDGE, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Chief Judge.

For eleven years, appellant, Jeffrey Roorda, was a full-time commissioned police officer employed by respondent, City of Arnold ("City"), a city of the third classification located in Jefferson County, Missouri which has adopted a merit system of employment for its police officers pursuant to § 85.541.[1] After an informal pre-termination hearing was held on the morning of June 20, 2001, Roorda was terminated by the City effective later that afternoon. Roorda timely appealed his dismissal to the Arnold Police Personnel Board ("Board"), which upheld his termination on December 12, 2001, after conducting a contested, on-the-record hearing in September and October 2001.[2] Roorda timely filed a Petition for Judicial Review of the Board's decision in the Circuit Court of Cole County.[3] On August 27, 2002, the circuit court denied Roorda's motion to supplement the record with certain evidence excluded by the Board and on February 4, 2003, the court entered a judgment sustaining the decision of the Board upholding Roorda's dismissal. Thereafter, Roorda timely filed this appeal. We affirm the judgment of the circuit court.

**Standard of Review and Facts**

 The general standards governing our review of this contested case were set forth in *Orion Security, Inc. v. Board of Police Commissioners of Kansas City*, 90 S.W.3d 157 (Mo.App. W.D.2002):

This court reviews the decision of the Board, not that of the circuit court. On appeal from an agency decision in a contested case, we consider only whether the agency's findings are supported by competent and substantial evidence on the record as a whole. We may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses. If the decision of the agency is supported by substantial and competent evidence on the whole record, it must be affirmed. On the other hand, we must reverse the agency's findings if it is determined the decision is not supported by competent and substantial evidence on the whole record, or if the decision constitutes an abuse of discretion, or is unauthorized by law, or is arbitrary and capricious. The evidence and all reasonable inferences from the evidence is considered in the light most favorable to the administrative agency's findings. The fact-finding function rests with the agency, and even if the evidence would support either of two find-

1. All statutory references are to RSMo 2000.

2. As a full-time commissioned police officer employed by a third-class city which has adopted a merit system police department, Roorda was not an at-will employee, but was entitled to a public hearing before the Board upon being suspended, demoted, or discharged for misbehavior or inefficiency. *See* § 85.541.

3. For jurisdictional purposes, we note that although this case arose out of Jefferson County, which is within the territorial jurisdiction of the Eastern District of this court, § 477.050, Roorda was authorized to file his petition for judicial review of the Board's decision in, among other possible venues, the Circuit Court of Cole County. § 536.110.3. Cole County is, of course, within territorial jurisdiction of the Western District, which gives this court jurisdiction of the appeal. § 477.070.

ings, the court is bound by the agency's factual determination. While this Court cannot substitute its own judgment on factual matters, it can independently determine questions of law.

*Id.* at 163 (internal citations, quotation marks, and brackets omitted); *see also* § 536.140.2.

So viewed, the record reveals that in July 1997, Roorda attempted to try to "cover" for another police officer by filing a report that contained false statements as to what happened during a suspect's apprehension and arrest. As a result of this false report, all charges against the defendant involved were dropped, and Roorda received a written reprimand from B.J. Nelson (the City's Chief of Police at the time) for violating the City Police Department's General Order 74.4 ("False Reporting").[4] The written reprimand issued to Roorda stated, in relevant part: "If it is ever determined again that you have lied in a police report, you will receive a more severe punishment, up to and including termination."

On March 15, 2001, Roorda wrote a memorandum to Dale Fredeking ("Chief Fredeking"), who was then the City's Chief of Police,[5] informing Chief Fredeking of Roorda's intention to utilize twelve weeks of leave under the Family Medical Leave Act ("FMLA") to attend to the upcoming birth of his child and asking permission to take such leave from May 22 through August 14, 2001. Roorda further asked to have this time classified as paid sick leave. On March 19, 2001, Chief Fredeking responded to Roorda by memorandum, informing him that, while he could

take FMLA leave for the birth of his child, the leave would be unpaid and the City could require him to use all of his paid vacation time before receiving unpaid FMLA leave. Chief Fredeking further advised Roorda that the pertinent Departmental General Order did not allow the use of paid sick leave to attend to the birth of a child.

On May 1, 2001, Roorda met with Chief Fredeking in Fredeking's office to discuss his refusal to grant Roorda's request to receive full sick pay while on FMLA leave. Roorda closed the door to Chief Fredeking's office a couple of minutes after the meeting commenced. On May 21, 2001, Roorda filed an Allegation of Employee Misconduct Report ("Misconduct Report"), in which he stated that Chief Fredeking had verbally abused and attempted to intimidate him during the May 1, 2001 meeting, which began in the Chief's office around 11:15 a.m. that morning. In particular, Roorda alleged that "Chief Fredeking yelled and cursed at me and slammed his fist on his desk in what appeared to be an attempt to intimidate me away from my legitimate request to use sick time. The Chief's door was open at the time and the administrative staff was on hand." The next day, Roorda filed an Internal Affairs Statement of Complaint ("IA Complaint") setting forth exactly the same complaints and allegations contained in the Misconduct Report he had filed the day before. Within the body of the IA Complaint, Roorda affirmed that the facts and information contained therein were true as follows: "I, Sgt. Jeff Roorda, do hereby affirm that the foregoing statement was given freely and without duress, and

---

**4.** General Order 74.4 states: "False reporting shall not be tolerated and shall be subject to disciplinary action."

**5.** At the time of the hearing before the Board, Dale Fredeking was no longer a City employ-

ee. Neither the City nor Roorda called him as a witness, although, as noted by the Board's hearing officer, he could have been subpoenaed by either party.

that all facts and information contained therein are true to the best of my knowledge."

On May 22, 2001, the Commander of the Department's Division of Internal Affairs, Detective Sergeant Richard Shular, was assigned to investigate the Misconduct Report and IA Complaint filed by Roorda. During the course of his investigation, Sgt. Shular interviewed Roorda, who, upon being asked if he had any other evidence that might support his allegations, "whether it be of a paper nature or any tape recordings or anything," replied that he needed to confer with his attorney. After doing so, Roorda acknowledged having tape-recorded his May 1, 2001 conversation with Chief Fredeking and later provided the cassette audio tape, which had been in the possession of his attorney, to Sgt. Shular. Roorda subsequently admitted that, on the same day (May 1, 2001), he had also tape-recorded conversations between himself and other Department personnel, including a secretary (Carol Shaw) and Chief Fredeking's administrative assistant (Lieutenant Terry Schweitzer), without informing them that he was doing so. After interviewing all other persons involved in the incident complained of by Roorda in the Misconduct Report and IA Complaint and reviewing all of the evidence available to him relating to the incident, Sgt. Shular, in a report dated June 4, 2001, stated that there was no evidence of any kind to support the allegations made by Roorda against Chief Fredeking in either the Mis-

conduct Report or the IA Complaint. In particular, Sgt. Shular concluded that the tape recording of the May 1, 2001 meeting demonstrated that Chief Fredeking did not slam his fist on his desk, did not yell at Roorda, and in no way attempted to intimidate Roorda. The audio tape also revealed that while Chief Fredeking did at one point use some coarse language ("bullshit" and "crap") to describe his overall impression of Roorda's unauthorized request to receive full sick pay while on FMLA leave,[6] he did not yell and curse at Roorda as alleged by Roorda in the Misconduct Report and IA Complaint. Most of this was further corroborated by Ms. Shaw, who was working at her desk located immediately outside Chief Fredeking's office before, during, and after the May 1 meeting. Due to his past disciplinary record, the seriousness of the false reports filed by Roorda, and the other Departmental General Order violations he had committed, Sgt. Shular recommended that Roorda be terminated.

The City terminated Roorda on June 20, 2001, and he then appealed to the Board. The Board found that in willfully and secretly tape-recording his May 1, 2001 conversations with Chief Fredeking, Ms. Shaw, and Lt. Schweitzer without proper prior authorization to do so, Roorda violated the Department's General Order 14.3.12 ("Unbecoming Conduct"), for which dismissal is an authorized penalty.[7] The Board also found that in knowingly making false statements and allegations in both

---

6. The record reflects that from May 22 through June 20, 2001 (the day he was fired), Roorda nevertheless took sick leave.

7. General Order 14.3.12 states that unbecoming conduct is "[a]ny conduct unbecoming to a member which is contrary to the good order and discipline of the department. For example, [this] shall include but not be limited to: ... Electronically recording the conversation of another Department member or a member

of the public without that person's prior knowledge unless otherwise approved by General Order 24.9.2 or unless done in conjunction with a sanctioned investigation in which the said surreptitious recording is specifically authorized and approved in advance of the recording by the Shift Commander, the Chief of Police or Commander of Uniform Services."

the Misconduct Report and the IA Complaint, Roorda violated General Order 14.2.4 ("Truthfulness"), an offense that is also punishable by termination of employment.[8] The Board further specifically found that Roorda's testimony during its hearing was "not credible and was not worthy of belief," while finding the exact opposite regarding the City's two primary witnesses against him, Sgt. Shular and Ms. Shaw. The Board ultimately concluded that Roorda "was disciplined and terminated based upon sufficient and credible evidence, and the entire record supports termination for just cause as set forth in the Arnold Police Department's Policy and Procedure Manual." The Board thus sustained the City's action in terminating Roorda. Other facts will be discussed later as necessary to decide this appeal.

## I.

■ Roorda brings four allegations of error on the part of the Board. In his first point, Roorda argues the Board's decision must be reversed because he was denied procedural due process, in that he was not provided sufficient notice of the charges brought against him. In particular, Roorda argues that the "Notice of Pre–Termination Hearing" he received on June 18, 2001 ("June 18 Notice") did not provide him with proper pre-termination notice pursuant to General Order 32.9 ("Pre–Termination Hearing"). We disagree.

General Order 32.9 states, in pertinent part:

The Chief of Police shall provide written notice to the member, which shall state the time, date and place of the pre-

termination hearing, and shall further state the charges against the member reasonably sufficient to apprise the member of the actions taken which were sufficient to constitute the imposition of termination.

The June 18 Notice provided to Roorda by Chief Fredeking clearly met each and every one of these requirements. The record shows that it stated the time, date, and place the pre-termination hearing was to be held and also informed Roorda that although the hearing would be informal, he would, pursuant to General Order 32.2.5 ("Dismissal Procedure"), "be afforded an opportunity to present facts relevant to the preliminary decision to terminate [his] employment." Furthermore, as demonstrated by the following excerpt, the June 18 Notice also stated the charges against Roorda in a manner reasonably sufficient to apprise him of the actions he was found to have taken which were deemed sufficient to justify his termination:

As you know, Detective Sergeant Richard Shular was assigned to investigate the complaint of employee misconduct that you lodged against me on May 21, 2001. Detective Sergeant Shular has completed his investigation and it was forwarded to Mayor Mark Powell for his review. After reviewing the facts of the investigation, Mayor Powell has determined that your allegation of employee misconduct against me is unfounded. As a result of the above investigation, it has been determined that you violated the following policies and directives of the City of Arnold Police Department Policy and Procedures Manual:

"[k]nowingly makes any other false, misleading or inaccurate official statement concerning any citizen or fellow member of the Department."

---

8. General Order 14.2.4 states that an "Officer of the Department is guilty of violating policy if he: knowingly signs any false, misleading, or inaccurate police report, record, return, regulation, order or other document" or

\* \* \*

*General Order No. 14, Section 14.2.4,* which covers *Truthfulness,* states that: 'An officer of the department is guilty of violating policy if he: knowingly signs any false, misleading, or inaccurate police report, record, return, regulation, order or other documents.' 'Knowingly makes any other false, misleading or inaccurate official statement concerning any citizen or fellow member of the department.'

\* \* \*

*General Order No. 14, Section 14.3.12,* which covers *Unbecoming Conduct,* states that: 'Any conduct unbecoming to a member which is contrary to the good order and discipline of the department. For example, [this] shall include but not be limited to: ... Electronically recording the conversation of another department member or a member of the public without that person's prior knowledge unless otherwise approved by General Order 24.9.2 or unless done in conjunction with a sanctioned investigation in which the said surreptitious recording is specifically authorized and approved in advance of the recording by the Shift Commander, the Chief of Police or Commander of Uniform Services.'

\* \* \*

In considering the appropriate action to take in this matter, the facts of the investigation have been taken into account, as well as your total and complete work record. As a result, a preliminary decision has been made that your em-

ployment with the City of Arnold Police Department be terminated.

▮▮▮ Roorda further claims the Department also failed to provide, after the June 20, 2001 pre-termination hearing and before his appeal to the Board, a statement, in plain and concise language, of specific facts upon which the charges were based, giving his name and rank, the time and place of the alleged offenses, and the circumstances relating thereto, as required by General Order 32.10 ("Board Hearings"). These complaints are utterly without merit as well. By letter addressed to "Sergeant Jeffrey Roorda" and dated June 20, 2001, after the pre-termination hearing was conducted Roorda was notified of his termination and the reasons for it as follows:

> As a result of the investigation into the complaint of employee misconduct that you lodged against Chief Dale R. Fredeking, a review of your total work record, and the pre-termination hearing that was held on June 20, 2001, I am informing you that your employment with the City of Arnold, Missouri, is being terminated as of June 20, 2001, at 3:00 PM.
>
> In accordance with ... General Order No. 32, Section 32.8,[9] you have ten (10) days to appeal your termination to the Police Personnel Board. If you decide to appeal the termination, you will be afforded a hearing on the charges that are listed in the notice of pre-termination hearing correspondence that you were sent on June 18, 2001.

Roorda filed his appeal to the Board by letter dated June 27, 2001. The pertinent portion of General Order 32.10 states: "At

---

9. The referenced portion of General Order 32.8 states: "When a recommendation is made for reduction in rank or termination or disciplinary suspension, the Chief of Police shall notify the member of specifications and charges. The member will be notified that he has ten (10) days to make a decision as to whether to accept the recommended discipline or request a hearing before the Police Personnel Board."

least ten days prior to [the] time set for the hearing, a copy of the Charges and Specifications, together with [a designation of] the time and place for the hearing shall be served on the accused." [10] On August 7, 2001, the Board's Secretary notified Roorda's attorney of the time, date, and place the appeal was to be conducted. In a September 7, 2001 letter, the Board's Secretary also notified Roorda and his attorney that "[p]ursuant to General Order 32.10 .... enclosed herewith are the Charges and Specifications relative to Mr. Roorda's appeal[.]" The enclosure was a copy of the June 18 Notice. Roorda's hearing commenced on September 18, 2001.

▮ It is clear to this court that the post-termination notice Roorda received satisfied both the specific requirements of General Order 32.10 and general constitutional requirements of due process. Our Supreme Court has held that when a police officer is charged with a violation of departmental rules,

> the basis of the charges need not be stated with such technical precision as in an indictment or information. This, in effect, distinguishes (and rightly so) the construction of disciplinary rules of this nature and charges thereunder, from the strict construction placed upon criminal statutes. It is sufficient if one is "fairly apprised" of what acts will constitute a violation of the Rules, and of what offense he has committed.

*Milani v. Miller*, 515 S.W.2d 412, 416 (Mo. 1974) (citing *Schrewe v. Sanders*, 498 S.W.2d 775, 777 (Mo.1973)). Furthermore, as the very purpose of a notice of dismissal "is to inform an employee of the nature of the charges so that he can adequately prepare his defense," *Giessow v. Litz*, 558 S.W.2d 742, 749 (Mo.App. E.D.1977), resultant prejudice is an indispensable condition of reversible error predicated on a claimed lack of adequate notice of the reasons for a disciplinary action. *Accord In re Storie*, 574 S.W.2d 369, 372 (Mo. banc 1978).

▮ The June 20 termination letter adequately set forth the "charges" being leveled against Roorda since it expressly referred to the "notice of pre-termination hearing correspondence that you were sent on June 18, 2001," and the June 18 Notice separately listed the distinct offenses found to have been committed by him (*e.g.*, false reporting and making unauthorized secret tape-recordings of other Department personnel). Considered together, those two documents were also sufficient to constitute a plain and concise statement of the "specifications" against Roorda, because they made it abundantly clear that the charged offenses were directly related to the circumstances surrounding the Misconduct Report Roorda lodged against Chief Fredeking on May 21, thereby establishing May 1 as the date the offenses were alleged to have been committed and implicitly establishing the time and place. Furthermore, Roorda knew or should have known full well the date, time, and place of the charged offenses, since he was personally responsible for completing and filing the Misconduct Report at issue, personally recorded and furnished to Sgt. Shular the illicit cassette audio tape, and was also present and represented by counsel during the June 20 pre-termination hearing conducted by Chief Fredeking, during which the charges and specifications contained in

---

**10.** General Order 32.10 further defines a "charge" as "a specific offense alleged to have been committed by the accused," and a "specification" as a "statement of specific facts upon which a charge is based. · Such statement shall be in plain and concise language, giving the name and rank of the accused, the time and place of the alleged offense and the circumstances relating hereto."

the Notice were read to him and he was able to present his position as to why he felt termination would be unwarranted. "A party who has received actual notice is not prejudiced by and cannot complain of the failure to receive statutory notice." *Bosworth v. Sewell,* 918 S.W.2d 773, 778 (Mo. banc 1996). In short, we think the record as a whole, including the transcript of the proceedings before the Board, clearly establishes that the charges and specifications received by Roorda were more than sufficient to fairly apprise him of the reasons for his termination and to allow him to prepare and present his defense. *See Gaffigan v. Whaley,* 600 S.W.2d 195, 197 (Mo.App. E.D.1980); *McClellon v. Gage,* 770 S.W.2d 466, 468 (Mo.App. S.D. 1989).[11]

▉ Moreover, as the City points out, Roorda has failed even to *allege,* much less demonstrate, any prejudice resulting from the claimed lack of sufficient advance pre- or post-termination notice of the reasons for his dismissal.[12] This is no doubt because Roorda's "defense" (both before the Board and in this appeal) was *not* that he didn't engage in the misconduct outlined in the June 18 Notice and June 20 termination letter, but that Chief Fredeking "had it out for him" for unrelated reasons and that other officers had previously made unauthorized secret tape-recordings of Department employees without being disciplined or dismissed. Be that as it may, Roorda does not describe how he was

prejudiced by any deficiency in the notice he received—for example, how his defense strategy would have been any different, what other evidence he could have obtained, or how a more favorable result would have ensued. This constitutes an independent reason to deny Roorda's first point relied on. Point denied.

## II.

Roorda second point asserts the Board's decision must be reversed because he was denied procedural due process and his rights to a fair hearing and to be heard on and defend against the charges brought against him, in that the Board did not allow him to call or elicit certain testimony from several witnesses on his behalf or review certain documents in the City's possession and control. He claims the Board acted arbitrarily and capriciously and thereby violated his due process rights by preventing him from presenting evidence to show that the *real* reason he was terminated was not for making false statements in the Misconduct Report and IA Complaint and secretly recording conversations between himself and other Department personnel, but because Chief Fredeking had it out for him and Roorda had subsequently lodged a more serious set of written complaints against Chief Fredeking while the investigations into the Misconduct Report and IA Complaint filed by Roorda on May 21 and 22, 2001, respectively, were still being conducted. We dis-

---

**11.** Roorda's heavy reliance on *Jones v. City of Jennings,* 23 S.W.3d 801 (Mo.App. E.D.2000) is misplaced. In *Jones,* the "notice" provided to the appellant was not addressed to him, did not specify the reasons he was fired, and merely laid out the reasons the City Council was considering his termination. *Id.* at 804–05. None of those circumstances are present here.

**12.** Indeed, on the first day of the hearing before the Board and before any witnesses

were called, counsel for the City stated that "if [Roorda] does not believe that he was given adequate notice, ... we would consent to a continuance if he desires one, but if he doesn't desire one, we're ready to proceed today." Roorda's attorney declined to request a continuance, agreeing with the Board's hearing officer that his client "wants to go forward and has no interest in any continuance."

agree, as we find that the Board properly refused to admit all such evidence, as well as other supposedly exculpatory evidence Roorda sought to introduce.

To address this point, we must summarize and place in context the evidence Roorda claims was improperly excluded by the Board. On the evening of May 22, 2001 (the day Roorda filed the IA Complaint against Chief Fredeking regarding their May 1 meeting), Roorda received a telephone call from Darla Fredeking, who was then Chief Fredeking's wife. The purpose of her call was to let Roorda know that she felt his job was in jeopardy because her husband had a "personal vendetta" against him. As a result of this call, the following day (May 23, 2001), Roorda prepared and submitted a memorandum to Mayor Powell. This memorandum purported to recite various statements and allegations made by Mrs. Fredeking during her telephone call to Roorda, including: (1) that her husband was "extremely agitated" with Roorda over the Misconduct Report and IA Complaint Roorda had filed against him on May 21 and May 22, respectively; (2) that her husband was also very upset with Roorda over Roorda's participation in the drafting and forwarding of a certain letter to the Fraternal Order of Police ("FOP Letter"); and (3) that the City Manager and ranking officers of the Department and neighboring jurisdictions had participated in a cover-up of a domestic disturbance involving her and her husband at their home. Roorda's May 23 memorandum to Mayor Powell further alleged that Chief Fredeking was guilty of numerous violations of the Department's General Orders.[13]

On May 24, 2001, two days after Sgt. Shular began conducting his investigation of the Misconduct Report and IA Complaint, a separate internal investigation was initiated concerning the FOP Letter. The investigation into this letter (which had been circulating in the Department and elsewhere, was highly critical of Chief Fredeking and his administration of the Department, and requested legal assistance from the FOP) was conducted by Lt. Schweitzer. Although he was not singled out as the subject or target of this investigation, Roorda was interviewed by Lt. Schweitzer, as were forty or so other police officers in the Department. After concluding his investigation, which took somewhere between two and three weeks to complete, Lt. Schweitzer issued an undated report to Chief Fredeking in which he summarized his findings and recommended that discipline be imposed against fourteen City police officers, including Roorda. Due to his apparent leadership role in authorizing, co-authoring, and distributing the FOP Letter, in this report Lt. Schweitzer recommended that Roorda be dismissed.[14]

▉ The Board's hearing officer ruled that all of the evidence about which Roorda complains in his brief was inadmissible in that it was irrelevant and had no probative value as to any of the material issues

---

**13.** The Board permitted limited testimony from Roorda and Mrs. Fredeking concerning the specific contents of the May 22 telephone call and the May 23 memorandum. When Roorda sought the admission of the memorandum itself into evidence, the Board refused his request.

**14.** The Board refused Roorda's requests to be given a copy of Lt. Schweitzer's report, the existence of which was not known to Roorda prior to the hearing, and to question him further about its contents. The Board also refused Roorda's request that the report, which was in Lt. Schweitzer's possession during the hearing, be marked and admitted into the record, as either an exhibit or for the purposes of an offer of proof.

to be decided by the Board. These rulings were entirely correct. Section 536.070(8) provides that in any contested case, "[i]rrelevant and unduly repetitious evidence shall be excluded." "Evidence is relevant when it tends to prove or disprove a fact in issue or corroborates other relevant evidence which bears on the principal issue." *Kendrick v. Bd. of Police Comm'rs of Kansas City*, 945 S.W.2d 649, 654 (Mo.App. W.D.1997) (internal quotation marks omitted). Under this standard, the evidence we have just summarized was clearly irrelevant and was properly excluded, as it tends neither to prove nor disprove any fact in issue and does not corroborate any other relevant evidence bearing on the principal issues before the Board, which were whether Roorda was properly subject to termination for (1) violating General Order 14.3.12 ("Unbecoming Conduct") by willfully and secretly tape-recording conversations he had no authority to record; and (2) violating General Order 14.2.4 ("Truthfulness") by knowingly making false statements in two police reports (the Misconduct Report and the IA Complaint).

▪ In particular, the Board's hearing officer correctly ruled that the evidence offered by Roorda as to Chief Fredeking's subjective motives in ordering Roorda's termination, including his alleged personal animosity towards Roorda, was not relevant and had no bearing on any of the issues before the Board for its determination. In *Heinen v. Police Personnel Board of Jefferson City*, 976 S.W.2d 534 (Mo.App. W.D.1998), the hearing officer refused to allow the police officer who had been discharged (Heinen) to elicit, on cross-examination, certain testimony from the police chief who fired him (Brewer) in order "to prove that Brewer had a continuing problem with inability to control his temper in his relationships with subordinates, and that the real reason he had terminated Heinen was out of personal animosity." *Id.* at 542. This court proceeded to reject Heinen's procedural due process claim as follows:

> Brewer's subjective motive in ordering Heinen's termination was irrelevant to the issue before the Board. The sole issue was whether or not Heinen had failed to conduct himself in a manner consistent with good behavior and efficient service. Chief Brewer's motives were irrelevant to the question before the Board.

*Id.* So it is here. It simply does not matter that Chief Fredeking may have been intensely displeased with Roorda for other reasons, or that Roorda may also have committed other acts of misconduct sufficient to independently justify his termination, as none of that evidence would have refuted the charges against him in any way and all of it was irrelevant. It was enough that the Board properly found, on the basis of competent and substantial evidence presented to it, that Roorda did what he was alleged to have done by the City in the June 18 Notice and June 20 termination letter, and that dismissal was an authorized punishment for those offenses.[15]

---

15. In arguing to the contrary, Roorda once again relies on *Jones v. City of Jennings*, 23 S.W.3d 801 (Mo.App. E.D.2000). Once again, however, that reliance is misplaced. In *Jones*, the Eastern District distinguished *Heinen* on the grounds that the evidence sought to be introduced by the appellant (Jones), which concerned his alleged suspected involvement in a leak of information harmful to the police department to a local news station, was "more relevant" than that in *Heinen* because it bore "on the motive of the individual bringing the charges" against Jones and tended "to explain the paucity of other evidence supporting Jones's termination." *Id.* at 805. As such, the Eastern District held, Jones could have used evidence concerning the leak "to question the authenticity of the charges

 Roorda also unsuccessfully sought to elicit testimony from several witnesses that no City police officer except Roorda had ever been dismissed or disciplined for surreptitiously tape-recording conversations in violation of General Order 14.3.12, even though similar past violations had been committed by a different officer or officers and were known to have been committed by the Department's Division of Internal Affairs and the Department's command staff.[16] Although not specifically denominated as such by Roorda during the hearing, the City correctly points out that he was attempting to lay the foundation for a claim of "selective enforcement." However, even if Roorda's proffered evidence of selective enforcement were to have been admitted, found credible, and deemed outcome-determinative by the Board (a very unlikely scenario, in our view), it is extremely doubtful whether selective enforcement is a viable defense in civil cases like this one. As the Missouri Supreme Court observed in *State ex inf. Attorney General v. Shull*, 887 S.W.2d 397 (Mo. banc 1994):

> against him," and the City denied him procedural due process by not admitting it. *Id.* at 806. In the case at bar, however, there is no "paucity of other evidence" supporting Roorda's termination and, therefore, no reason to believe that the charges against him were not "authentic."

16. The record shows that the prior tape-recording incidents about which the witnesses would have testified did not involve Roorda and occurred in or before June 1997, which was *before* Dale Fredeking became the City's Chief of Police.

17. The Court in *Shull* went on to say that although it was not deciding the scope of the defense or its applicability in criminal or civil cases in this state,

> we nevertheless hold that selective enforcement is not a defense in a *quo warranto*

*Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), recognizes the selective enforcement defense rooted in the equal protection clause in criminal cases. This, however, is a civil case. Neither [the appellant] nor our independent research identifies a single appellate decision in which a court has accepted the defense of selective enforcement in a civil action.

*Id.* at 401 (internal citations omitted).[17] Furthermore, in the criminal context, the U.S. Supreme Court has held that "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). A criminal defendant's proof of a policy of selective enforcement must show "that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.; see also State v. Watts*, 601 S.W.2d 617, 621 (Mo.1980). Inasmuch as Roorda's claim is based on events which were alleged to have occurred before Chief Fredeking became the City's Chief of Police, at best he has alleged "no more than a

> action seeking to enforce sanctions for violations of constitutional prohibitions by public officials.... Under the constitution, the relevant inquiry is limited to whether, by virtue of her office, a public official participated in appointing a relative within the prohibited degree of relationship to public office. If that inquiry is answered in the affirmative, the motivations for the Attorney General's actions are inconsequential.

*Id.* While we decline to decide whether the defense is viable in a civil action where the decision of an administrative body upholding the termination of a public employee is challenged, we note that to accept Roorda's argument would be to hold that regardless of the circumstances, unless the City's Chief of Police disciplines all officers who violate General Order 14.3.12, he may not discipline any. *See Mechanic v. Gruensfelder*, 461 S.W.2d 298, 316 (Mo.App. E.D.1970).

failure to prosecute others because of a lack of knowledge of their prior offenses. This does not deny equal protection due petitioners under the Fourteenth Amendment." *Oyler,* 368 U.S. at 456, 82 S.Ct. at 506. For all these reasons, the Board also properly excluded the evidence of selective prosecution offered by Roorda. Point denied.

### III.

 In his third point, Roorda argues that the Board's decision must be reversed because he was denied procedural due process and his right to a fair hearing, in that he was not given an opportunity to make certain offers of proof during the hearing, as required by § 536.070(7), which states that, in any contested case:

> Evidence to which an objection is sustained shall, at the request of the party seeking to introduce the same, or at the instance of the agency, nevertheless be heard and preserved in the record, together with any cross-examination with respect thereto and any rebuttal thereof, unless it is wholly irrelevant, repetitious, privileged, or unduly long.

We disagree.

The City argues that the Board did not err in refusing to accept Roorda's offers of proof because under the express terms of § 536.070(7), they are not required to be received as to evidence which is "wholly irrelevant, repetitious, privileged, or unduly long." The evidence about which Roorda complains, claims the City, falls within one or more of those exclusions since (1) it was wholly irrelevant; (2) it would require the Board to examine the private, closed personnel records of Department employees other than Roorda; and (3) it would have taken an unduly long amount of time to receive the evidence concerning other allegedly similar incidents of prohibited but unpunished secretly-recorded conver-

sations, and to establish the proper foundation as to whether they were sufficiently similar to be even remotely material and probative.

Roorda's brief makes it clear that the evidence about which he complains in this point is the same as that referred to in his second point. As illustrated by our discussion of that point, the nature and extent of this excluded evidence was sufficiently explained and preserved for appellate review during the hearing, either in the testimony that was presented or in the numerous narrative and documentary offers of proof and other statements Roorda's attorney was permitted to make during the hearing before the Board. We have already held that this evidence was properly excluded by the Board as "irrelevant" under § 536.070(8). Since it was "wholly irrelevant" under § 536.070(7) as well, the Board did not abuse its discretion or otherwise err in refusing Roorda's requests to make further offers of proof. Point denied.

### IV.

In his fourth and final point, Roorda argues that the circuit court abused its discretion in denying his "Motion to Include Evidence Improperly Excluded" by the Board during the hearing because procedural irregularities and acts of unfairness by an administrative agency require that additional evidence be presented before the court reviewing the agency decision, in that the Board's actions denied him the opportunity to present evidence and make offers of proof in violation of due process standards and these procedural irregularities warranted the submission of additional evidence before the court. We disagree.

Once again, Roorda's brief makes it clear that the evidence about which Roorda complains in this point is the same as

**800**

that referred to in his second and third points. As we have already held that this evidence was properly excluded by the Board under §§ 536.070(8) and 536.070(7), the circuit court did not abuse its discretion in denying Roorda's motion to supplement the record with that evidence.[18] Point denied.

### Conclusion

For all of the foregoing reasons, the judgment of the circuit court sustaining the decision of the Board upholding Roorda's dismissal is affirmed.

All concur.

---

**18.** Although the circuit court was sitting as a court of review vis-à-vis the Board's decision, Roorda's motion did not request relief in the form of a remand to the Board with directions that it reconsider his case in the light of the evidence he claimed was improperly excluded by the Board. *See § 536.140.4.* Instead, the motion requested that (1) the circuit court receive and examine the evidence

*in camera* to determine whether it was improperly excluded from the record of Roorda's hearing; and (2) if so, that it be admitted into the record for the circuit court's further review and consideration. We need not and do not decide whether Roorda's motion was authorized under §§ 536.140.3 and/or 536.140.4, as claimed by Roorda and vigorously denied by the City.