David **PATRICK**, Respondent,

v.

**CITY OF JENNINGS**, Appellant.

**No. ED 92500.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 3, 2009.

David S. Davis, St. Louis, MO, for appellant.

Kevin J. Dolley, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

The City of Jennings appeals from the judgment of the Circuit Court of St. Louis County reversing the Police Personnel Board's (Board) decision to suspend Sergeant David Patrick (Patrick) for three days without pay. On appeal, Patrick contends that the trial court did not err in reversing the Board's decision because: (1) the Board's suspension decision violated his rights to procedural due process under Article 1, Section 10 of the Missouri Constitution and Amendment 14 of the U.S. Constitution in that he did not receive proper notice of the basis for his suspension; and (2) the Board's suspension decision was not supported by competent and substantial evidence.[1] We reverse the judgment of the trial court and remand with instructions to reinstate the Board's decision.

### Factual Background and Proceedings Below

On August 13, 2007, the Jennings City Council suspended Patrick, a commissioned police officer with Jennings, for five days without pay due to Patrick's involvement in an off-duty altercation with fellow Jennings police officer, Officer Joseph Goad (Goad). Upon receiving notice of the City Council's suspension decision, Patrick notified Jennings by letter of his intent to appeal the decision and requested a hearing before the Board pursuant to the Jennings City Code.[2] In his letter, Patrick

---

1. Pursuant to Rule 84.05(e), when the circuit court reverses the decision of an administrative agency, the party aggrieved by the agency's decision files the appellant's brief, which in this case is Patrick, and Jennings files its brief as the respondent.

2. Jennings has adopted a merit system for its police officers pursuant to Mo.Rev.Stat. § 85.541 (2000). As a part of its merit system, Jennings City Code § 29–30 provides that any police officer who is demoted, suspended, or discharged may appeal in writing to the Police Personnel Board within thirty

claimed that his notice of suspension failed to provide the factual basis for the City Council's suspension decision.[3] Thereafter, the City Council approved a more detailed statement setting forth the reasons for its suspension decision, which the City Clerk sent to Patrick in a letter dated August 29, 2007. The letter contained the following information:

A majority of the members of the Jennings City Council found that your actions on July 15th at # 2 Karington Court in O'Fallon, Missouri constituted "misbehavior" and violated rules and regulations # 16.1 (conduct) for the following reasons:

*According to the statement given to the Jennings Police Department by Jeanie Medlock, the resident at whose home the incident took place, Ms. Medlock asked Sgt. Patrick to get in his car and leave her residence, after which Patrick picked up her son Austin and then turned and punched Officer Joseph Goad. According to the statement given to the O' Fallon Police Department by Jeanie Medlock, as Sgt. Patrick swung her son around to pick him up. Sgt. Patrick punched Officer Goad.*

*Also according to the statement given to the Jennings Police Department by Jeanie Medlock, later in the day, Sgt. Patrick returned to Ms. Medlock's house and got out of his car, confronting Officer Goad (who was there at the request of Ms. Medlock). Sgt. Patrick was asked to leave but refused. Ms. Medlock then told Sgt. Patrick not to call her*

*or come by her house again or she would apply for an order of protection.* (emphasis in the original). Along with the letter, the City Clerk provided Patrick with a copy of the packet of information the Jennings City Council reviewed in reference to his suspension. The letter also informed Patrick that he could review his personnel file at the city hall or police department at any time.

The Board held its hearing for Patrick's appeal on October 24, 2007. At the hearing, Jennings offered testimony from Goad and Jeanie Medlock, who was a former friend of Patrick and Goad's then-girlfriend (currently his fiance), as well as an eye-witness to the July 15, 2007 incident. Patrick testified in his own behalf. The evidence before the Board revealed the following:

Patrick was a commissioned police officer with Jennings for approximately the past nine and a half years. In March 2005, Patrick met and became friends with Ms. Medlock, a police clerk for Town and Country and a single mother of three. Patrick and Ms. Medlock would talk on the phone and exchange text messages, but they did not have a romantic relationship as Patrick was engaged to another woman (to whom he is now married) at the time he met Ms. Medlock.

In April 2007, roughly two years after she met Patrick, Ms. Medlock began dating Goad. At that time, Patrick was Goad's supervisor. Goad informed Patrick that he "wasn't very happy" with Patrick's relationship with Ms. Medlock. In response,

---

days of the effective date of such action. The Board shall then hold a hearing where the parties shall have the right to be represented by counsel and present evidence. After the close of the evidence the Board shall render a decision affirming or reversing the challenged order and issue findings of fact and conclusions of law. The disciplined officer or the

City Council may then appeal the Board's decision to the circuit court pursuant to Missouri's Administrative Procedure Act, Ch. 536 RSMo.

**3.** The notice of suspension referred to in Patrick's letter was not made part of the record before the trial court or before this court.

Patrick told Goad that if he had any "questions, comments or concerns" about his relationship with Ms. Medlock that he "take it up directly to her" and that he would not discuss with him any "personal intimate matters" of their relationship. Thereafter, Goad requested a transfer from Patrick's shift claiming that Patrick was mistreating him and "abusing his power as a supervisor." In June 2007, Goad received his transfer.

On July 1, 2007, at approximately 9:00 p.m., Patrick visited Ms. Medlock at her home. During the visit, Ms. Medlock received a text message from Goad indicating that he was on his way to her house. To avoid "any problems", Patrick asked Ms. Medlock to send a text message telling Goad not to come over while he was there. Ms. Medlock sent the text, but Goad did not believe her because he thought she was not talking to Patrick anymore.

Soon thereafter, Goad arrived at Ms. Medlock's house and pulled his car into the driveway behind Patrick's vehicle. At that time, Patrick, Ms. Medlock, and two of her children were outside near the garage. Goad exited his car and asked Patrick what he was doing at his girlfriend's house so late at night, to which Patrick responded, "I don't need your permission to be here, if you have a problem with me being here talk to your girlfriend, it doesn't concern you." Patrick walked over to his car and leaned on the hood, and Goad continued asking Patrick why he was there. Dismissively, Patrick replied with statements such as, "Joe, it doesn't concern you why I'm here." Patrick admitted that he knew his responses to Goad's questions "pissed him off."

As Patrick and Goad's conversation became more heated, Ms. Medlock stepped between the two men. Believing that Patrick was yelling at his mother, Medlock's five-year-old son, Austin, approached Patrick and said, "Don't yell at my mommy." Patrick continued yelling and Austin kicked Patrick in the shin. With respect to subsequent events, the witnesses' testimony significantly differs.

Goad and Ms. Medlock generally agreed that after Austin kicked Patrick, Patrick picked up Austin and turned around and punched Goad. Patrick and Austin then "somehow" fell on Patrick's car and Patrick released Austin. Ms. Medlock grabbed Austin and escorted him inside the house while Patrick and Goad began to fight. At some point during the fight, both men fell to the ground and Patrick began punching Goad in the face. When Ms. Medlock returned, she lied and told the two men that she had called the police. Patrick and Goad stopped fighting and left in their cars. Goad later returned after Ms. Medlock had called and asked him to come back.

In Patrick's version of the night, he picked up Austin in order to remove him from the hostile situation. After he grabbed Austin, Goad struck Patrick from behind pushing Patrick and the child against Patrick's car. Patrick released Austin, and then turned around and "threw a punch in defense." Subsequently, a "fight ensued." During the fight, Ms. Medlock announced that she had called the police. By that time, Patrick and Goad "were in an altercation on the ground." Patrick testified that "as soon as [he] heard the police were being called", he held Goad down by his arm and said, "Joe let's forget about this, the police are on their way, let's forget about it." Goad, however, continued to "scratch and bite." After Goad eventually calmed down, Patrick released him and stood up. As Patrick began walking to his car, Goad attacked Patrick from behind. Patrick turned around and "struck [Goad] in the face" and the two men fell to the ground

again. Ultimately, the two men separated and Patrick got in his car and left.

According to Patrick, while he was driving home he decided to return to Ms. Medlock's residence and explain to her why he "didn't agree with her relationship with [Goad], his age difference, the immaturity level and he has an attitude problem." When Patrick arrived, he saw Ms. Medlock and Goad sitting on the front porch. Goad asked Patrick to leave and Patrick replied, "I'm here to talk this out." Ms. Medlock then demanded that Patrick leave or she would call the police. Patrick approached Ms. Medlock and asked her "is this really what you want?" She answered yes and again asked him to leave. Patrick complied.

That night, Ms. Medlock reported the incident to the O'Fallon Police Department. An officer responded to Ms. Medlock's residence and took a statement from Ms. Medlock and Goad. Thereafter, Patrick received a call from the O'Fallon Police Department, and Patrick drove to the O'Fallon police station and gave a statement. The O'Fallon Police Department subsequently prepared an incident report, but no criminal charges or arrests followed.

At the hearing, Jennings introduced as one of its exhibits, a certified copy of the minutes from the Jennings City Council's August 27, 2007 meeting. The minutes set forth the factual basis for City Council's suspension decision, which was identical to the factual basis included in the notice the City Clerk sent to Patrick on August 29, 2007. A caption above the minutes stated: "Statement approved by the Jennings City Council on August 27, 2007 in reference to the suspension of Sgt. Patrick and referred to in the minutes of that meeting." Counsel for Patrick objected to the exhibit claiming that neither he nor his client had previously received a copy of the City

Council's minutes. Ultimately, the Board accepted the exhibit.

Following the hearing, the Board entered findings of fact and conclusions of law, providing in pertinent part:

### Findings of Fact

8. Prior to the start of the fight, Goad arrived at Medlock's house while Patrick was visiting. Goad pulled his car into Medlock's driveway behind Patrick's vehicle. Board member Young questioned Goad as to why he parked his vehicle directly behind Patrick's vehicle if he wanted Patrick to leave. Goad's only response to Young was that there could have possibly been another car in the driveway but he could not recall. Medlock also admitted that Goad pulled his car behind Patrick's vehicle.

9. When Goad arrived, he approached Patrick and greeted him in a sarcastic tone and began to aggressively and repeatedly ask Patrick what he was doing at Medlock's house and why he was there at 9:00 p.m. Patrick responded to Goad that he had been invited to the residence by Medlock and that the time of night was not unusual for him to visit. Patrick had often visited Medlock's residence between the hours of 8:00 p.m.—10:00 p.m.

10. Officer Goad and Sgt. Patrick began fighting with each other.

11. Patrick testified that while he had Austin in his arms and while they were heading toward the garage door, Goad struck Patrick from behind. The force pushed Patrick and the child against the door of Patrick's car. Goad continued to strike Patrick on the back of Patrick's head and neck. While being struck, Patrick set Austin on the ground. At no time did Patrick drop the child nor did Patrick place the child on the hood of his vehicle. In light of the continuing as-

sault by Goad, Patrick threw a punch in self-defense and Medlock said that she was calling the police. Patrick and Goad fell to the ground as part of the altercation and which point Patrick held Goad down on the ground and tried to communicate to Goad that the police were coming and that he should settle down. Goad continued to resist by biting and scratching Petitioner.

12. Sgt. Patrick returned to Ms. Medlock's home uninvited and was again asked to leave by Officer Goad and Ms. Medlock.

13. O'Fallon police came to Ms. Medlock's home and made a report and later interviewed Patrick at the station.

### Conclusions of Law

We base our decision on the sworn verbal testimony of Sgt. Patrick, Officer Goad and Ms. Medlock. We felt both parties should have been punished for unprofessional conduct. We are embarrassed by Sgt. Patrick's and Officer Goad's conduct in this matter.

We also agree that the action taken by the Council was based on the provided written information they had at their meeting, prior to our extensive Police Board hearing on the matter.

We decided that five days unpaid suspension for Sgt. Patrick was excessive, and that three days unpaid suspension for Sgt. Patrick would be appropriate for conduct unbecoming.

(citations to the transcript omitted).

Patrick appealed the Board's decision to the Circuit Court of St. Louis County. The trial court entered its judgment reversing the Board's suspension decision and remanding the action to the Board with instructions. Subsequently, upon Patrick's motion, the trial court modified its judgment and awarded Patrick court costs. This appeal followed.

### Standard of Review

In an appeal from an administrative action, we review the decision of the agency rather than the trial court. *Coffer v. Wasson–Hunt*, 281 S.W.3d 308, 310 (Mo. banc 2009). In these cases, the party aggrieved by the administrative decision bears the burden of persuasion before this court to show why the administrative decision is in error. *Versatile Mgmt. Group v. Finke*, 252 S.W.3d 227, 232 (Mo.App. E.D. 2008). Our review is limited to whether the administrative action: "1) violates constitutional provisions; 2) exceeds the agency's statutory authority or jurisdiction; 3) is unsupported by competent and substantial evidence upon the whole record; 4) is unauthorized by law; 5) made upon unlawful procedure or without a fair trial; 6) is arbitrary, capricious, or unreasonable; or 7) involves an abuse of discretion." *Schwartz v. City of St. Louis*, 274 S.W.3d 509, 512 (Mo.App. E.D.2008); Mo.Rev. Stat. § 536.140.2 (Cum.Supp.2005).

Issues regarding whether the notice provided to a disciplined employee satisfies the requirements of constitutional due process are a question of law. *Smith v. Rosa*, 73 S.W.3d 862, 864–65 (Mo.App. W.D.2002). Accordingly, we review these issues de novo, and need not defer to the rulings of either the trial court or the administrative agency. *See id.*

In reviewing an administrative agency's decision, if the decision is supported by competent and substantial evidence on the record as a whole, it must be affirmed. *Orion Sec., Inc. v. Board of Police Comm'rs of Kansas City*, 90 S.W.3d 157, 163 (Mo.App. W.D.2002). "Substantial evidence is competent evidence, which, if believed, would have probative force on the issues." *Ferrario v. Baer*, 745 S.W.2d 193, 195 (Mo.App. W.D.1987). The fact-

finding function rests with the agency, and "[w]e may not substitute our judgment on the evidence for that of the agency, and we must defer to the agency's determinations on the weight of the evidence and the credibility of witnesses." *Orion Sec., Inc.,* 90 S.W.3d at 163 (citation omitted).

## Discussion [4]

### A. Notice of Suspension

Patrick contends that the Board's suspension decision violated his rights to procedural due process under the Missouri and federal constitutions in that he did not receive proper notice of the basis for his suspension. Specifically, Patrick claims that: (1) the initial notice of his suspension provided no factual basis for the City Council's suspension decision; (2) the second notice from the Jennings City Clerk "indicat[ed] her understanding of the factual basis for the discipline imposed against Patrick and [was] not from a decision-maker in the disciplinary process"; (3) he was not informed that the City Council "created a new basis for discipline" until he received a copy of the City Council's minutes at the hearing; and (4) the notice provided at the hearing "was not directed to [him] or any individual in particular and was simply a part of the City Council's meeting minutes."

First, we are unable to review Patrick's claim regarding the lack of a factual basis in his initial notice of suspension because Patrick failed to include the challenged initial notice in the record before the trial court, and consequently, it is not before this court. *See* Mo.Rev.Stat. § 536.130.4 (a plaintiff seeking review of an agency action is responsible for filing the record with the circuit court). Nevertheless, even assuming the initial notice failed to contain a factual basis for the City

Council's decision, Patrick admits that, upon his request, he received a second notice from the City Clerk on August 29, 2007 which set forth the reasons for his suspension. Such supplemental notice may be considered as part of the notice of discipline. *McClellon v. Gage,* 770 S.W.2d 466, 468 (Mo.App. S.D.1989).

In the alternative, Patrick seeks to challenge the second notice on the grounds that it was merely the City Clerk's "understanding" of the City Council's basis for suspension. The record, however, shows that the second notice incorporated the statement approved by the City Council setting forth the factual basis for its suspension decision. In a caption directly above the City Council's statement, the notice stated that "the Jennings City Council found that your actions ... constituted 'misbehavior' ... for the following reasons." There is nothing in the record supporting Patrick's contention that the notice was merely the City Clerk's understanding of the basis for the City Council's decision.

In his third and fourth claims, Patrick challenges the City Council's August 27, 2008 minutes that Jennings offered as an exhibit at the hearing. Specifically, he claims that the minutes submitted at the hearing revealed for the first time that the City Council had "created a new basis" for its suspension decision and that the minutes were not directed toward him or any particular individual. Both claims are without merit. First, Patrick admits that the basis provided in the City Council's minutes was the same basis he had previously received in his second notice. Additionally, although the copy of the City Council's minutes Jennings submitted at the hearing was not specifically directed at Patrick, Patrick's second notice, containing

---

4. Patrick's points on appeal have been rear- ranged for continuity in our analysis.

those exact minutes, was specifically directed and addressed to Patrick.[5]

 Not only are Patrick's claimed deficiencies in his notice unsupported by the record, Patrick fails to demonstrate or allege that he was prejudiced by his allegedly deficient notice. "[R]esultant prejudice is an indispensable condition of reversible error predicated on a claimed lack of adequate notice of the reasons for a disciplinary action." *Roorda v. City of Arnold*, 142 S.W.3d 786, 794 (Mo.App. W.D.2004) (citing *In re Storie*, 574 S.W.2d 369, 372 (Mo. banc 1978) ("Absent a showing of prejudice, respondent cannot complain of alleged irregularities in the informal notice.")). The purpose of a notice of discipline is to inform the officer of the nature of the charges so that he or she can adequately prepare a defense. *Id.* The notice need not be stated with the precision required for a criminal indictment or information. *Id.* (citing *Milani v. Miller*, 515 S.W.2d 412, 416 (Mo.1974)). But the "[n]otice must be sufficiently specific as to the time and nature of the incident at issue so that the employee has no uncertainty as to the acts related to her [discipline]." *Lombardi v. Dunlap*, 103 S.W.3d 786, 790 (Mo.App. W.D.2003).

Here, Patrick never challenges the sufficiency of the factual basis contained in his notice. Furthermore, the record reveals that Patrick's second notice informed him of the date and place the incident occurred, as well as specific factual allegations the City Council relied upon for its decision, including Patrick's visit to Ms. Medlock's residence, his altercation with Goad, his subsequent return to Ms. Med-lock's residence, and the involvement of the O'Fallon Police Department. Patrick received the notice almost two months before the hearing. At the hearing, Patrick testified extensively about the events on July 15, 2007 and Patrick's attorney thoroughly cross-examined Goad and Ms. Medlock on their versions of the incident at Ms. Medlock's residence. Point denied.

*B. Competent and Substantial Evidence*

Patrick claims that the Board's suspension decision is unsupported by competent and substantial evidence. More specifically, Patrick contends that: (1) because the Board found that he "lawfully acted in self-defense," the evidence failed to establish that his actions constituted misbehavior, and (2) the Board's suspension decision is not supported by competent and substantial evidence because "none of the differing reasons for suspension of Patrick was established by the City."

 In his first contention, Patrick suggests that the Board's finding that he acted in "self-defense" precluded the Board from concluding that his actions warranted discipline. In support, Patrick relies solely on Mo.Rev.Stat. § 563.031 (2000), which is part of Missouri's Criminal Code and provides that "[a] person may . . . use physical force upon another person when and to the extent he reasonably believes such force to be necessary to defend himself." Patrick's reliance on Section 563.031, however, is misplaced as the issue before the Board was not whether Patrick's actions were criminal, but whether they constituted misbehavior in violation of Jennings' rules of conduct.

5. For his only authority on this point, Patrick cites *Jones v. City of Jennings*, 23 S.W.3d 801 (Mo.App. E.D.2000), where the notice of a police officer's termination was "inadequate on its face" because it was not addressed to the officer, did not specify the reasons the City Council terminated him, and was prepared prior to the City Council's decision and merely provided the reasons why the Council was considering his termination. *Id.* at 805. *Jones* is inapposite here as none of those circumstances are present in this case.

In his second contention, Patrick bases his claim that Jennings failed to establish any of the "differing reasons" for his suspension on the fact that the Board found that he acted in self-defense. Patrick's argument, however, ignores the additional reasons Jennings gave for suspending Patrick. Specifically, Jennings provided as one of its reasons for Patrick's suspension that:

Sgt. Patrick returned to Ms. Medlock's house and got out of his car, confronting Officer Goad (who was there at the request of Ms. Medlock.). Sgt. Patrick was asked to leave but he refused. Ms. Medlock then told Sgt. Patrick not to call her or come by her house again or she would apply for an order of protection.

Similarly, the Board found that "Sgt. Patrick returned to Ms. Medlock's home uninvited and was again asked to leave by Officer Goad and Ms. Medlock." In addition, both the notice and the Board's findings attest to the involvement of the O'Fallon Police Department in this incident. Thus, Patrick's claim that Jennings failed to establish any of the reasons for its suspension is contrary to the record.

Beyond arguing that the Board found that he acted in self-defense, Patrick does not dispute with any specificity that the Board's findings were supported by competent and substantial evidence in the record. Moreover, Patrick does not contend that the Board's suspension decision was otherwise arbitrary, capricious, unreasonable, involved an abuse of discretion or was unauthorized by law. Because Patrick poses no further challenges to the Board's decision and the Board's factual findings and conclusions are supported by competent and substantial evidence in the record,

we affirm the Board's decision. *Orion Sec., Inc.,* 90 S.W.3d at 163. Point denied.[6]

### Conclusion

We reverse trial court's judgment and affirm the decision of the Board. We remand the case to the trial court to reinstate the Board's decision.

SHERRI B. SULLIVAN, P.J., and ROBERT G. DOWD, JR., J., Concur.

---

**6.** In a third point on appeal, the parties dispute whether the trial court had jurisdiction to enter its judgment awarding Patrick court costs. Because we are reversing the trial court's judgment, we decline to reach the issue of costs.